Lawrence E. WARD, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 34A04–0002–CR–59.

Court of Appeals of Indiana.

Sept. 13, 2000.

Rehearing Denied Oct. 31, 2000.

Caroline B. Briggs, Lafayette, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge

A jury convicted Lawrence E. Ward of one count of child molesting,[1] as a Class C felony, and one count of attempted child molesting,[2] as a Class C felony. He subsequently pled guilty to being an habitual offender.[3] Ward now appeals, raising the following issues for our review:

I. Whether his convictions for attempted child molesting and child molesting violate state and federal prohibitions against double jeopardy.

II. Whether he was deprived of a fair trial by an independent jury.

III. Whether the trial court erred by refusing to accept his motion to withdraw his guilty plea to the habitual offender charge.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the verdict reveal that in 1994 ten-year old G.J.R. lived with his foster mother next door to Ward. Sometime in May or June of 1994, G.J.R. went to Ward's house to watch the movie "Home Alone." When the movie ended, Ward asked the child to give him a hug. Ward then asked G.J.R. to remove his clothing, which the child did. After fondling the child's penis and rubbing the child's bottom, Ward undressed and placed his penis in the child's anal area. The child told Ward to stop. Ward responded, "Let me do it another way" and then said, "Nevermind." *Record* at 364.

During Ward's trial, the court learned that during the trial Juror John McGavic had lunch with Judge Dennis Parry, the presiding judge of the Howard Superior Court. Upon being questioned by the court, Juror McGavic admitted that he had lunch with the judge, but denied any conversation about the trial. The court allowed the juror to remain on the jury.

The jury convicted Ward as charged, and following the verdict, he pled guilty to being an habitual offender. The trial court sentenced him to eight years' imprisonment on each Class C felony conviction, and twelve years' imprisonment for the habitual offender conviction, all to run consecutively.

Following the trial, Ward filed a motion to correct error, alleging that he was denied a fair trial because Juror Karen Beatty was the widow of now deceased, former Sheriff J.D. Beatty, who was a distant cousin to Ward. Beatty was also a first cousin to Jeff Beatty, who made a prior sexual molestation allegation against Ward. The trial court denied the motion to correct error.

## DISCUSSION AND DECISION

### I. Double jeopardy

Ward initially argues that his convictions for Class C child molesting and Class C attempted child molesting violate the prohibition against double jeopardy, or being punished twice for the same offense, under both the Indiana and Federal Constitutions. Specifically, Ward contends that one act of anal sex was used to establish two separate statutory violations. He further claims that the facts alleged in the charging informations and the elements

---

1. *See* IC 35–42–4–3(b).

2. *See* IC 35–41–5–1; 35–42–4–3(b).

3. *See* IC 35–50–2–8.

instructions provided to the jury are exactly the same such that there is no distinction between the two crimes. The State, on the other hand, argues that the two charges are based upon separate acts. We agree with the State.

Preliminarily, we note that the charging informations and jury instructions can be interpreted as failing to sufficiently differentiate the two charged crimes. However, Ward cannot now claim that he was not apprised of the nature and character of the charges against him because he failed to file a motion to dismiss or otherwise seek a more definitive statement of the charges against him. Similarly, Ward failed to raise any objection to the tendered instructions and cannot now be heard to complain. Because the actual evidence used to convict Ward sufficiently distinguished the two offenses, there can be no "reasonable possibility" that the jury relied upon the essential elements of one of the offenses to establish the essential elements of the other offense.

 Under Article I, Section 14 of the Indiana Constitution, "No person may be put in jeopardy twice for the same offense." Two or more offenses are the "same offense" in violation of Article I, Section 14 if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Richardson v. State,* 717 N.E.2d 32, 49–50 (Ind.1999). Ward contends that his convictions violate both the statutory elements test and the actual evidence test of *Richardson.*

 Applying the statutory elements test, we first identify the elements of the two offenses. *Id.* at 50. Once we have identified the essential elements of each offense, we compare the essential elements in order to determine if each offense contains "at least one element which is separate and distinct from the other offense so that the same evidence is not necessary to convict for both offenses." *Id.* at 52. The objective of the test is to "determine whether the essential elements of separate statutory crimes charged could be established hypothetically." *Id.* at 50.

In pertinent part, IC 35–42–4–3(b) provides: "A person who, with a child under fourteen (14) years of age, performs or submits to any fondling or touching, of either the child or the older person, with intent to arouse or to satisfy the sexual desires of either the child or the older person, commits child molesting, a Class C felony." Attempt is defined in IC 35–41–5–1 as occurring when a person, acting with the culpability required for commission of the crime, engages in conduct constituting a substantial step toward commission of the crime. Here, the State charged Ward with child molesting by fondling or touching and attempted child molesting by attempting to penetrate G.J.R.'s anus with his penis. To establish child molesting, the State had to prove that Ward fondled the child with the intent to satisfy sexual desires. To establish attempted child molesting, the State had to prove that Ward with the requisite mens rea took a substantial step toward placing his penis near the child's anus in an attempt to penetrate the child so as to complete the act of anal intercourse. We conclude that the State could prove separate offenses without using the same evidence.

We cannot agree with Ward that the elements of the attempted child molesting charge are subsumed within the child molest charge. Here, the State charged two separate criminal offenses. In this case, fondling of the child is a separate offense from attempted penetration of the child's anus. The two offenses are not the same for purposes of double jeopardy. Thus, we find no double jeopardy violation under the statutory elements test.

 The actual evidence test requires us to look at the evidence presented at trial to determine whether each challenged offense was actually established by sepa-

rate, distinct facts. *Id.* at 53. "Dual convictions cannot stand if a defendant 'demonstrate[s] a reasonable possibility that the evidentiary facts used by the factfinder to establish elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" *Wise v. State,* 719 N.E.2d 1192, 1201 (Ind.1999) (quoting *Richardson,* 717 N.E.2d at 53). Here, Ward was convicted of one count of child molesting based upon fondling and one count of attempted child molesting based upon attempted anal intercourse. The State established that Ward committed two separate criminal offenses based upon distinct facts. The Record reveals that Ward asked the child to remove his pants so Ward could fondle the child's penis. Ward then undressed, rubbed the child's bottom, and attempted to complete anal intercourse by inserting his penis in the child's anal area. The State proved two separate acts. The penile fondling was not part of the attempted anal intercourse, not contemporaneous with or incidental to it. There is no reasonable possibility that the jury used the same evidence to convict Ward of both offenses. Accordingly, under the actual evidence test, there is no double jeopardy violation.[4]

Ward also argues that, in addition to state constitutional jurisprudence, the federal prohibition on double jeopardy prohibits his multiple convictions. In *Richardson,* our supreme court pronounced a state double jeopardy standard independent of the federal double jeopardy standard set forth in *Blockburger v. United States,* 284

U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger,* the United States Supreme Court established the following test, referred to as the same elements test: "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182. In *Richardson,* our supreme court noted that the statutory elements test is similar to the same elements test. *Richardson,* 717 N.E.2d at 50 n. 41.

■ Further, we note that this court has the responsibility of engaging in independent state constitutional analysis and that the protections provided by the Indiana Constitution may be more extensive, less extensive, or coterminous with federal constitutional guarantees. *Taylor v. State,* 639 N.E.2d 1052, 1053 (Ind.Ct. App.1994). Accordingly, we are compelled to interpret the statutory elements test of *Richardson* as encompassing all the protections required by the "same elements" test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Article I, Section 14 of the Indiana Constitution provides greater protection against multiple punishments than the double jeopardy protection provided by the Fifth Amendment to the United States Constitution based upon the two-prong analysis. Because the federal double jeopardy standard is subsumed within our own state

---

**4.** In *Watkins v. State,* 575 N.E.2d 624 (Ind. 1991), the defendant was charged and convicted of child molesting, defined as fondling and touching with intent to arouse and satisfy sexual desires, and with attempted child molesting as attempted sexual deviate conduct. Determining that these acts occurred within moments of each other as part of a single incident, our supreme court held that multiple convictions for acts committed as part of one incident could not be sustained under the rule announced in *Bowling v. State,* 560 N.E.2d 658 (Ind.1990). *Id.* at 625. In *Bowling,* the court, relying upon *Ellis v. State,* 528

N.E.2d 60 (Ind.1988), held that "the imposition of two sentences for the same injurious consequences sustained by the same victim during a single confrontation violated both Federal and State double jeopardy prohibitions." *Bowling,* 560 N.E.2d at 660. However, in *Richardson,* 717 N.E.2d at 49 n. 36 (Ind.1999), the court specifically rejected *Ellis* on which *Bowling* rests. Accordingly, based upon the supreme court's apparent rejection of the single incident analysis, we cannot hold in the present case that the attempted anal intercourse charge was subsumed by the penile fondling charge.

constitutional standard, we do not separately analyze the federal double jeopardy challenge. As previously discussed, Ward's convictions do not constitute the "same offense" in violation of the Indiana Double Jeopardy Clause under either the statutory elements of the challenged crimes or the actual evidence used to convict him of the offenses. As we find no violation of state double jeopardy principles, we similarly find no violation under the analogous federal same elements test.

## II. Impartial jury

■ Ward next contends that he was deprived of a fair trial by an independent jury. Specifically, Ward claims that Juror Beatty's relationship to him within the fifth degree by marriage resulted in a biased jury. Moreover, he argues that Juror Beatty failed to truthfully respond during voir dire to the question of whether she knew the defendant. Ward finally contends that Juror McGavic's lunch with Judge Parry further supports a finding of implied bias.

■ Proof that a juror was biased against a defendant or lied during voir dire generally will entitle the defendant to a new trial. *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988). However, to establish juror misconduct, the defendant must first present some specific, substantial evidence showing that a juror was potentially biased. *Id.* Further, there must be a showing that the bias or misconduct was gross, and that it probably harmed the defendant. *Id.* We also note that bias may be either actual or implied. *Haak v. State*, 275 Ind. 415, 420, 417 N.E.2d 321, 323 (1981).

Here, our review of the Record does not support the implication of bias. While bias may be actual or implied, the fact that Ward and Juror Beatty were related within the fifth degree by marriage does not give rise to an implication of bias per se. Some relationships, such as parent-child or husband-wife, constitute per se evidence of bias. Yet, as one moves beyond these

relationships, the implication of bias decreases. Here, we are confronted with a case involving the widow of Ward's extremely distant cousin. We cannot conclude from these facts alone that sufficient evidence of bias exists. Furthermore, based upon our review of the Record we cannot conclude Juror Beatty provided untruthful answers during voir dire. There is simply no evidence that Juror Beatty knew either Ward or the victim of the prior child molest.

■ The trial court also did not err in concluding after a hearing that Juror McGavic could remain on the jury as an impartial juror. No evidence was presented that Ward's trial was even discussed during the lunch. Ultimately, we cannot conclude that either actual bias or an inference of implied bias exists in either the case of Juror Beatty or Juror McGavic. Accordingly, we conclude that Ward was not deprived of a fair trial by an impartial jury.

## III. Habitual offender guilty plea

■ Ward finally argues that that the trial court erred in accepting his guilty plea to the habitual offender enhancement. He contends that he was erroneously informed that he was not pleading guilty to being an habitual offender, but instead was only admitting that he had two prior convictions. Initially, we observe that despite the State's argument that Ward cannot challenge his guilty plea to being an habitual offender on direct appeal, we are guided by *Weatherford v. State*, 697 N.E.2d 32, 36 n. 4 (Ind.1998), which established that a defendant may directly appeal a trial court's ruling on the defendant's motion to withdraw a guilty plea. Consequently, we must decide whether the trial court erred in rejecting Ward's motion to withdraw his guilty plea to being an habitual offender.

Based upon a complete review of the Record we cannot conclude that the trial court erred in denying Ward's motion to withdraw. Here, after the trial court

granted a short recess in order for Ward to discuss the guilty plea with his family and attorney, Ward knowingly and voluntarily pled guilty to having two prior unrelated felonies. The Record reveals that he understood the exact plea that he. was entering. Therefore, the trial court did not err in rejecting Ward's motion to withdraw the guilty plea.

Affirmed.

FRIEDLANDER, J., and DARDEN, J., concur.