Darrell FORBES, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 59A01–0210–CR–416.

Court of Appeals of Indiana.

Aug. 20, 2003.

David E. Mosley, Brad Jacobs, Jeffersonville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

MAY, Judge.

Darrell Forbes brings this interlocutory appeal of the trial court's denial of his motion to suppress the results of a blood alcohol test. On appeal, Forbes raises one issue, which we restate as whether the trial court erred when it denied his motion to suppress. In addition, we address the procedure the State or a defendant should follow to obtain a document from another jurisdiction in the course of a criminal proceeding. We reverse.[1]

## FACTS AND PROCEDURAL HISTORY

On September 10, 2000, Forbes was driving an automobile northbound on State Road 37 in Orange County, Indiana. Michael Smith was a passenger in the car. Forbes was driving at a high rate of speed when he crashed the car, killing Smith. Forbes was injured in the crash. Emergency medical personnel arrived at the scene to assist Smith and Forbes.

Indiana State Trooper Gregory Ashby reported to the scene. He requested emergency medical personnel draw blood from Forbes for a blood alcohol test. Emergency personnel at the scene informed Trooper Ashby that Forbes was too unstable for them to draw blood. A helicopter arrived to fly Forbes for treatment at the University of Louisville Hospital in Louisville, Kentucky. Trooper Ashby asked medical personnel to instruct the hospital staff to take a blood sample and run a blood alcohol test. In addition, Trooper Ashby contacted dispatch and asked that the treating hospital be informed that the blood sample needed to be taken within three hours. The next morning, Trooper Ashby called the hospital and was told the test had been completed but he would need a subpoena to obtain the results.

On September 18, 2000, Trooper Ashby obtained from the Orange County Prosecutor's Office a subpoena *duces tecum* form. He took that form to Louisville, Kentucky, where he met with Jefferson Circuit Court Judge Barry Willett, who signed the

1. We heard oral argument on this case at the State House on July 8, 2003.

Indiana subpoena form. At the same time, Trooper Ashby obtained a Kentucky subpoena *duces tecum* from the Jefferson County Circuit Court. He took both forms to the University of Louisville Hospital. Hospital employee Linda Beam signed the bottom of the Kentucky subpoena, and gave Trooper Ashby a copy of Forbes' blood test results.[2]

Also in September of 2000, the Orange County, Indiana, Prosecutor's Office initiated a separate attempt to get the results of Forbes' blood alcohol test. The Clark County, Indiana, Prosecutor's Office sent to the University of Louisville Hospital a Kentucky subpoena *duces tecum*.[3] That subpoena *duces tecum* instructed the hospital to produce Forbes' blood alcohol test results on September 29, 2000. On September 29, the Hospital sent the requested documents to the Clark County Prosecutor's Office.

On September 26, 2000, the State charged Forbes with operating a vehicle while intoxicated resulting in death, a Class B felony,[4] and operating a vehicle with a blood alcohol content of .10% or more resulting in death, a Class B felony.[5] Forbes moved to suppress his blood alcohol test results. Following a hearing, the trial court denied that motion. The trial court certified its ruling for interlocutory appeal, and we accepted jurisdiction over the appeal under Ind. Appellate Rules 5(B) and 14(B).

## STANDARD OF REVIEW

We review the trial court's ruling on a motion to suppress in a manner similar to other sufficiency questions. *Edwards v. State*, 759 N.E.2d 626, 630 (Ind.2001). We affirm if substantial evidence of probative value supports the trial court's decision. *Id.* We may neither reweigh the evidence nor assess the credibility of the witnesses. *Id.* In addition, we consider the evidence in the light most favorable to the trial court's decision. *Id. See also Crabtree v. State*, 762 N.E.2d 217, 219–20 (Ind.Ct.App. 2002) (discussing conflict between standard announced in *Edwards* and standard announced in other appellate court cases, which required the appellate court also to consider uncontested evidence contrary to the trial court's decision). When a defendant challenges on Constitutional grounds whether evidence was gathered properly, the State bears the burden of proving the evidence was admissible. *See, e.g., Edwards*, 759 N.E.2d at 630 (discussing admissibility under the Fourth Amendment of evidence gathered by warrantless search); *Carter v. State*, 730 N.E.2d 155, 157 (Ind.2000) (discussing admissibility of confession under the Fifth Amendment).

---

**2.** The test indicated that two and a half hours after the accident, Forbes' blood alcohol level was .30%, or three times the legal limit.

**3.** Both Forbes and the State acknowledge that the Orange County Prosecutor's Office contacted the Clark County Prosecutor's Office for help, that the Clark County office obtained the documents from the hospital, and that the Clark County office sent the test results to the Orange County office. However, this information was presented at the motion to suppress hearing during argument by State's counsel and was not testified to by someone under oath. Technically, therefore, the

State's explanation of the process by which it obtained the test result documents is not in evidence. *See Blunt–Keene v. State*, 708 N.E.2d 17, 19 (Ind.Ct.App.1999) ("It is axiomatic that the arguments of counsel are not evidence."). Nevertheless, as both parties concede those are the facts, we presume they are true for the purposes of this appeal.

**4.** Ind.Code Ann. § 9–30–5–5(a)(3) (West 2000).

**5.** Ind.Code Ann. § 9–30–5–5(a)(1) (West 2000).

## DISCUSSION AND DECISION

██ At issue in this case is the admissibility of medical records obtained from a hospital in Louisville, Kentucky.[6] To obtain the documents, Trooper Ashby presented an Indiana subpoena *duces tecum* and a Kentucky subpoena *duces tecum* to the hospital's medical records office, and the Clark County Prosecutor's Office presented a Kentucky subpoena *duces tecum* to the hospital's medical records office.

Forbes argues all of the subpoenas were invalid.[7]

██ Generally speaking, subpoenas have territorial restrictions, and "a state court cannot require the attendance of a witness who is a nonresident of, and is absent from, the state." 81 Am.Jur.2d *Witnesses* § 15 (1992) [hereinafter, *"Witnesses"*]. Consequently, unless states have some form of interstate compact, one state cannot subpoena a witness

6. We note that Indiana's implied consent laws include a provision explicitly making the results of blood alcohol tests automatically available to police officers investigating a crime, Ind.Code § 9–30–6–6(a), such that no subpoena would have been necessary to obtain these records if Forbes had been transported to a hospital in Indiana. However, Kentucky's implied consent laws do not contain any such provision. *See* Ky.Rev.Stat. Ann. chapter 189A (Michie 2002 Supp.). Rather, Kentucky's implied consent laws include only a provision that makes test results inadmissible if the test was not administered within the time required by the statute. *See id.* § 189A.010(2). Consequently, a subpoena was required for the State to obtain Forbes' test result from the hospital in Kentucky.

7. The State may believe that Forbes has waived the issue we address herein regarding the application of the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings ("the Uniform Act"). Nevertheless, despite Forbes' failure to specifically mention the Uniform Act in his appellate brief, we address the validity of the State's subpoenas under that Act for three reasons.

First, the State had the burden of demonstrating that the evidence produced by the subpoenas was admissible, *See, e.g., Edwards,* 759 N.E.2d at 630, and we do not take that burden lightly. The State may not run roughshod over the right of its citizens to be free from unreasonable searches and seizures.

Second, while an argument not raised in an appellate brief is waived for the purposes of appeal, *French v. State,* 778 N.E.2d 816, 826 (Ind.2002), if a party has raised an argument, it may supplement its brief by providing additional authority to support the arguments already raised. Ind. Appellate Rule 48. Here, Forbes' argument in his brief was that the State failed to follow the proper procedure for obtaining the medical records because it failed to get a subpoena certified by an Orange County judge. (*See, e.g.,* Br. of Appellant at 6) ("there is no claim by the State that this second *subpoena duces tecum* was put before any judge or magistrate for review") (emphasis original); *id.* at 7 ("Specifically, neither the Orange County prosecutor nor the Clark County Prosecutor sought leave of any court before issuing the Kentucky subpoena's [sic] to the University of Louisville medical records department."). At oral argument, Forbes cited Ind.Code § 35–37–5–2, which is part of the Uniform Act, as a reason why the State was required to obtain a subpoena certified by an Orange County judge. Consequently, we may address the validity of the subpoenas under Uniform Act pursuant to the exception to the waiver rule for later raised authority.

Third, if we were to find that Forbes waived this argument because his counsel failed to raise it, we undoubtedly would be faced at some point in the future with a petition for post-conviction relief based upon counsel's ineffectiveness for failing to cite the Uniform Act. By addressing the issue now, we circumvent the need for the trial court to conduct a trial that may later be reversed and, thereby, optimize judicial economy. *See, e.g., Angleton v. Estate of Angleton,* 671 N.E.2d 921, 925 n. 4 (Ind.Ct.App.1996) (citing "the interests of judicial economy" to justify addressing on the merits an argument raised for the first time in the "motion for leave to amend appellate brief to cite additional authority"), *trans. denied* 683 N.E.2d 589 (Ind. 1997).

from another state. *Id.* Accordingly, a state court may not issue a subpoena *duces tecum* requiring the production of documents held across state lines. *See Houston Bus. Journal, Inc. v. Office of Comptroller of Currency, United States Dept. of Treasury,* 86 F.3d 1208, 1213 (D.C.Cir.1996) ("[A] state-court litigant seeking to compel a non-party to produce documents must use the state court's subpoena power or, if the non-party is beyond the jurisdiction of such court, use whatever procedures another state may provide.") (holding litigant may not move action to federal court to avoid limitations of state court's subpoena power). Given these restrictions, an Indiana subpoena *duces tecum* could not be used to compel a hospital in Kentucky to release documents.[8]

Because one state may not compel a resident of another state to attend judicial proceedings, a number of states have adopted the Uniform Act to Secure the Attendance of Witnesses From Without a State in Criminal Proceedings (hereinafter, the "Uniform Act").[9] *See Witnesses* § 34 (1992); Ind.Code Ann. Ch. 35–37–5, Refs. & Annos. (West 1998). The Uniform Act sets out procedural rules by which one state's courts may subpoena witnesses or documents from another state, but only if both states have passed the Uniform Act. *Witnesses* § 40 (1992). The purpose of the Uniform Act is to "promote the enforcement of the criminal law and the administration of justice in criminal proceedings in the several states." *Id.* § 35. Both Indiana and Kentucky have adopted the Uniform Act. *See* Ind.Code Ch. 35–37–5; Ky.Rev.Stat. Ann. §§ 421.230 to 421.270 (Michie 1992).

"The only procedure to subpoena an out-of-state witness is set forth in" the Uniform Act.[10] *State v. Sanderson,* 214 Mont. 437, 448, 692 P.2d 479, 485 (1985). If a

---

**8.** At oral argument, the State asserted that the Kentucky judge's signature on the Indiana subpoena "converted" it to a valid Kentucky subpoena. As intrigued as we are by this argument, we decline the State's invitation to so hold. As a Kentucky judge has no authority to act on behalf of an Indiana court, the judge's signature could not make an Indiana subpoena valid in Indiana or any other jurisdiction. Moreover, as the document clearly indicated that it was a subpoena from the Orange County Circuit Court, we fail to see how the signature of a judge from another jurisdiction could make that document anything other than what it purports to be: a subpoena from an Indiana court.

**9.** In addition providing for the attendance of persons, Indiana's version of the Uniform Act provides a procedure for obtaining documents held out of state via subpoena *duces tecum. See* Ind.Code § 35–37–5–2(b) ("The clerk shall issue a subpoena, or a subpoena for the production of documentary evidence...."); *Id.* § 35–37–5–2(c) ("A subpoena may also command the person to whom it is directed to produce the books, papers, documents, or tangible things designated therein.").

**10.** We note that Trooper Ashby and the Prosecutor's Office also served Kentucky subpoenas *duces tecum* on the hospital. Kentucky law contains specific statutes controlling the procedure a party must use to obtain medical records. For example, when a party serves a subpoena *duces tecum* on a hospital and the hospital elects to release the requested documents, that party "shall notify all other attorneys of record or other parties if they are not represented by attorneys of the hospital's election." Ky.Rev.Stat. § 422.305(1) (Michie 1992). Then, the patient whose medical records are being subpoenaed, or some person acting on his behalf, may petition the court "for a protective order denying, restricting or otherwise limiting access and use of such ... records." *Id.* at § 422.315. Because the State failed to follow these Kentucky statutes for obtaining medical records, we do not decide whether Forbes' medical records would have been admissible if the State had obtained the documents using a procedure that was valid under Kentucky law.

party fails to follow the procedure set out in the Uniform Act, the trial court may properly deny the party's request to subpoena an out-of-state witness. *Id.* (holding defendant's motion for subpoena of a witness was properly denied because defendant did not properly follow the procedure set out the Uniform Act); *State v. Horne,* 215 Kan. 448, 449, 524 P.2d 697, 698 (1974) (denial of subpoena for out-of-state witness is not erroneous when defendant "failed to comply with the method proscribed [sic] by" the Uniform Act). Consequently, for the State to have properly obtained Forbes' blood alcohol test results from the hospital in Kentucky, the State needed to follow the Uniform Act.

A subpoena *duces tecum* may be issued under Indiana's version of the Uniform Act, "[w]hen permitted by the laws of the United States, this or another state or foreign country," and when an Indiana "court upon proper application and cause shown" authorizes its issuance. Ind.Code § 35–37–5–2(a). Accordingly, a person in Indiana requesting a document from Kentucky must first meet the requirements of Ind.Code § 35–37–5–5. That section provides:

(a) If a person in any state that has made provision for commanding persons within its borders to attend and testify in criminal prosecutions in this state or grand jury investigations commenced or about to commence in this state is a material witness in a prosecution pending in a court of record in this state or in a grand jury investigation which has commenced or is about to commence in this state, a judge of the court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. This certificate shall be presented to a judge of a court of record in the county of the state in which the witness is found.

While this statute speaks of "commanding persons ... to attend and testify," Ind. Code § 35–37–5–2 indicates that the procedures set out in Indiana's version of the Uniform Act are also applicable to subpoenas duces tecum. *See supra* n. 9.

Once the party trying to obtain the documents has met Indiana's requirements, it must meet the requirements of Ky.Rev. Stat. § 421.240. That statute provides, in pertinent part:

(1) If a judge of a court of record in any state which by its laws has made provision for commanding persons within that state to attend and testify in this state certifies under the seal of such court that there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence, that a person being within this state is a material witness in such prosecution, or grand jury investigation, and that his presence will be required for a specified number of days, upon presentation of such certificate to any judge of a court of record in the county in which such person is, such judge shall fix a time and place for a hearing, and shall make an order directing the witness to appear at a time and place certain for the hearing.

(2) If at a hearing the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other states, and that the laws of the state in which the prosecution is pending, or grand jury investigation has commenced or is about to commence (and of any other state through which the witness may be required to pass by ordinary course of travel), will give to him protection from arrest and the service of civil

and criminal process, he shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where a grand jury investigation has commenced or is about to commence at a time and place specified in the summons. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein.

(3) If said certificate recommends that the witness be taken into immediate custody and delivered to an officer of the requesting state to assure his attendance in the requesting state, such judge may, in lieu of notification of the hearing, direct that such witness be forthwith brought before him for such hearing; and the judge at the hearing being satisfied of the desirability of such custody and delivery, for which determination the certificate shall be prima facie proof of such desirability may, in lieu of issuing subpoena or summons, order that said witness be forthwith taken into custody and delivered to an officer of the requesting state.

Before a subpoena may be issued under the Uniform Act, a criminal proceeding or grand jury investigation must be under way. Ind.Code § 35–37–5–2(b)(2) ("Every subpoena shall ... state the name of the court and the title of the action"); Ky.Rev. Stat. § 421.240 ("If a judge of a court of record in any state ... certifies ... there is a criminal prosecution pending in such court, or that a grand jury investigation has commenced or is about to commence ..."); *Witnesses* § 35 ("Thus, the Uniform Act contemplates that the criminal proceedings in the demanding state must be either a trial, a grand jury investigation, or other prosecution or proceeding pending or under way.").

Therefore, for the Orange County Prosecutor's Office or Trooper Ashby to have obtained Forbes' medical records in accordance with Indiana's version of the Uniform Act, the following steps should have been taken. First, the Orange County Prosecutor should have filed charges against Forbes or impaneled a grand jury. *See* Ind.Code chs. 35–34–1, 35–34–2. Second, the Prosecutor should have asked an Orange County judge to issue "a certificate under the seal of the court stating" the State had charged Forbes with or a grand jury was investigating Forbes's possible commission of operating a vehicle while intoxicated resulting in death, a Class B felony, and operating a vehicle with a blood alcohol content of .10% or more resulting in death, a Class B felony, and determination of whether Forbes was guilty of those crimes or whether the grand jury should indict him for those crimes required access to the results of the blood alcohol test conducted on Forbes' blood on the night of the accident. *See* Ind.Code § 35–37–5–5.

Third, the State should have taken the subpoena *duces tecum* certified by the Orange County judge to a judge in Jefferson County, Kentucky. That judge would have fixed "a time and place for a hearing" and ordered someone, presumably a representative of the hospital or of Forbes, to appear for the hearing. *See* Ky.Rev.Stat. § 421.240(1). At that hearing, the Kentucky judge would have determined whether it would be proper under Kentucky law to release Forbes' medical records.[11]

Neither Trooper Ashby nor the Orange County Prosecutor's Office followed those steps when obtaining Forbes' blood alcohol test results. The State did not empanel a grand jury or file charges against Forbes before attempting to subpoena the docu-

---

11. We note that this procedure presumably would have afforded Forbes notice that his medical records were being sought, as required by Ky.Rev.Stat. § 422.315.

ments. Neither Trooper Ashby nor the Prosecutor's Office contacted a judge in Orange County to obtain a certificate under the seal of the court that explained the facts and why the documents were needed. *See* Ind.Code § 35–37–5–5. Moreover, neither the Orange nor Clark County Prosecutor's Office contacted a judge in Jefferson County, Kentucky, to fulfill the requirements of Ky.Rev.Stat. § 421.240. While Trooper Ashby did contact a judge in Jefferson County, he did not have a certificate from a judge in Orange County as required by both the Indiana and Kentucky versions of the Uniform Act. *See* Ind.Code § 35–37–5–5; Ky.Rev.Stat. § 421.240. As a result, the State did not comply with the Uniform Act, and we reluctantly must reverse the trial court's denial of Forbes' motion to suppress the blood alcohol test results.[12]

## CONCLUSION

■ An Indiana subpoena *duces tecum* is not a valid process by which the State may procure documents held in another state. The appropriate procedure to follow to obtain documents held out of state is outlined in the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings. Because neither Trooper Ashby nor the Orange County Prosecutor's Office followed the procedure outlined in the Uniform Act, we must reverse the trial court's denial of Forbes' motion to suppress the documents obtained.[13]

Reversed.

SULLIVAN, J., and KIRSCH, J., concur.

---

**12.** The State claims, despite its failure to comply with the appropriate statutory procedures, that Forbes medical records were admissible under *Oman v. State,* 737 N.E.2d 1131 (Ind. 2000), *reh'g denied, cert. denied* 534 U.S. 814, 122 S.Ct. 38, 151 L.Ed.2d 12 (2001). In *Oman,* the court held that evidence, gathered with a subpoena *duces tecum* that was not issued in accordance with the controlling statutory authority, was nonetheless admissible under the Fourth Amendment, and Indiana law, if the subpoena met the three-part reasonableness test established in *See v. City of Seattle,* 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). *Id.* at 1141. That three-part test requires a subpoena to be: "(1) relevant in purpose; (2) sufficiently limited in scope, and (3) specific in directive so that compliance will not be unreasonably burdensome." *Id.*

Contrary to the State's claims, Trooper Ashby's Indiana subpoena does not meet the *See* requirements. The State needed access only to the blood alcohol test result, but the subpoena requested the "Medical Records of" Forbes. That request is neither "sufficiently limited in scope" or "specific in directive so that compliance will not be unreasonably burdensome." Moreover, even if the subpoena were reasonable under the Fourth Amendment, it would not be valid in Kentucky. *See supra* p. 1115–1116.

As for the Kentucky subpoenas, we note that the Prosecutor's subpoena may have passed the *See* test, because it requested only the results of Forbes' blood alcohol test. Nevertheless, the subpoena was defective in other respects. *See supra* n. 10. We decline the State's invitation to hold the Kentucky subpoenas would be valid in Kentucky if they passed the *See* test. *See, e.g., Ward v. State,* 736 N.E.2d 265, 269 (Ind.Ct.App.2000) (states are permitted to provide protection to their citizens in excess of the protection provided by the U.S. Constitution), *reh'g denied.*

**13.** We note that the Orange County Prosecutor's Office, should it choose to follow the procedure outlined in the Uniform Act to obtain Forbes' blood alcohol test results, may proceed with its cause of action against Forbes.