**FOR PUBLICATION**



ATTORNEY FOR APPELLANT:

**MATTHEW J. MCGOVERN**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J. T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENNIS VERMILLION, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 13A01-1201-CR-17 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable K. Lynn Lopp, Judge
Cause No. 13C01-0905-FC-13

**November 20, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

Dennis Vermillion was convicted of two counts of Class C felony sexual misconduct with a minor after an incident in 2009. He was sentenced to eight years—five years executed and three years suspended to probation—on each count, to run consecutively, for a total sentence of sixteen years. On appeal, Vermillion contends that the trial court erred in admitting prior-misconduct evidence and his convictions violate Indiana's Double Jeopardy Clause. He also raises numerous arguments regarding his sentence. We find that Vermillion's convictions do not violate double jeopardy, and while the admission of prior-misconduct evidence was error, it does not amount to fundamental error. We also conclude that the trial court acted within its discretion in ordering Vermillion to serve consecutive sentences. However, we conclude that Vermillion's total sentence exceeds the cap permitted by Indiana Code section 35-50-1-2(c), which allows, at most, a ten-year sentence in these circumstances. We therefore affirm in part, reverse in part, and remand for resentencing.

## Facts and Procedural History

Fourteen-year-old S.H.'s father was friends with Vermillion. S.H. often babysat Vermillion's infant daughter and helped with tasks at Vermillion's house, such as painting. S.H. considered Vermillion a friend. In May 2009, Vermillion came to S.H.'s house when S.H. was home alone. While Vermillion and S.H. watched television, Vermillion began rubbing S.H.'s leg. S.H. told him to stop, but Vermillion ignored her and put his hand inside her shirt and bra, touching her breast. He then straddled S.H. and began kissing her neck. S.H. told Vermillion to "get off of her" and again asked him to

2

stop. Tr. p. 102. Vermillion told S.H. to "ask nicely," and S.H. responded, "please." *Id.* Despite S.H.'s request, Vermillion continued kissing her neck. He then began rubbing her vagina through her clothing. S.H. continued to ask Vermillion to stop, telling him that her father would be home soon. *Id.* Eventually, Vermillion stopped touching S.H. and stood to leave. Vermillion told S.H., "What happens here, stays here." *Id.*

S.H. reported the incident to her high-school principal. The State charged Vermillion with two counts of Class C felony sexual misconduct with a minor. One count charged Vermillion with touching S.H's breast, while the other charged Vermillion with touching S.H.'s vagina. *See* Appellant's App. p. 7.

At trial, S.H. testified about the May 2009 incident:

[I] was just watching TV and then he, he just starts rubbing my leg[,] and I tried to get him to stop. I just say stop and then he is putting his hand up my shirt and up my bra and starts touching my breast and starts kissing on my neck and then he straddles me . . . .

Tr. p. 102. After a pause, she continued:

I ask him to get off and he says, and he says ask nicely. So, I said please. And . . . [] he doesn't get off me and he's still kissing my neck and then I'm wearing what I consider night clothes, a tank top and some shorts and he is trying to rub the outside of my shorts on my vagina area and I'm like[,] my dad should be getting home any minute. Saying that thinking maybe he'd get off me and he didn't and then after plenty of times of saying please get off me [] he tells me to calm down[,] and I tell him I am calm and he tells me to stay still[,] and I didn't want to kick him or try to push him or anything [be]cause he is a bigger guy than me and I was alone and I was scared. So, eventually he did get off me and before he left, the only thing he could say to me was what happens here, stays here.

*Id.* at 103. S.H. also testified that on two previous occasions, Vermillion paid her for babysitting and painting with alcohol and cigarettes. *Id.* at 96. S.H. also described

another incident at Vermillion's home when S.H. asked Vermillion for a cigarette and Vermillion responded, "I'll give you a whole pack if you show me your tit." *Id.* at 125.

Vermillion did not testify at his trial, but his defense counsel argued that the incident S.H. described did not take place because Vermillion was at a church dinner that evening. Counsel also called witnesses, including Vermillion's wife and mother-in-law, to testify that Vermillion was indeed at the church dinner on the night in question.

The jury found Vermillion guilty on both counts. At sentencing, the trial court identified the following aggravators: (1) Vermillion's "prior criminal history," *id.* at 410, which included past charged offenses dismissed as part of a plea agreement; (2) Vermillion's position of trust with respect to S.H.; and (3) evidence of Vermillion's uncharged misconduct involving minors, which included providing them with alcohol and sexually explicit materials. As a mitigating factor, the court noted that Vermillion's incarceration would be a hardship on his family. The court sentenced Vermillion to eight years—five years executed and three years suspended to probation—on each count, to run consecutively, for a total sentence of sixteen years.

Vermillion now appeals.

**Discussion and Decision**

Vermillion contends that the trial court erred in admitting prior-misconduct evidence and that his convictions violate Indiana's Double Jeopardy Clause. He also raises numerous arguments regarding his sentence.

**I. Prior-Misconduct Evidence**

4

Vermillion challenges the admission of S.H.'s testimony that he offered to pay her for babysitting and painting with alcohol and cigarettes and tried to bribe her with cigarettes to expose her breasts. Vermillion argues that this prior-misconduct evidence was improperly offered to show that he "groomed" S.H.[1] The State, however, argues that the evidence was not offered for this purpose, but instead, to show Vermillion "intended to have some kind of sex with [S.H.] at some point in time." Appellee's Br. p. 12.[2]

At trial, Vermillion did not object to the testimony he now challenges. His claims are therefore waived unless he can show that fundamental error occurred. *Kimbrough v. State*, 911 N.E.2d 621, 634 (Ind. Ct. App. 2009). The fundamental-error rule is extremely narrow. *Id.* Fundamental error occurs only when the error "constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Id.*

Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." The rule is designed to prevent the jury from assessing a defendant's present guilt on the basis of his propensities—the so-called "forbidden inference." *See Hicks v. State*, 690 N.E.2d 215, 218-19 (Ind. 1997). Prior-misconduct evidence may be

---

[1] "'Grooming' is 'the process of cultivating trust with a victim and gradually introducing sexual behaviors until reaching the point' where it is possible to perpetrate a sex crime against the victim." *Piercefield v. State*, 877 N.E.2d 1213, 1216 (Ind. Ct. App. 2007) (quoting *United States v. Johnson*, 132 F.3d 1279, 1283 n.2 (9th Cir. 1997)).

[2] Although the State also notes that the evidence could be used to show Vermillion's motive, the argument emphasizes the intent exception, so we address that claim.

admissible to prove motive, intent, or other material facts at issue in a case. *Id.* Rule 404(b)'s list of permissible purposes is illustrative but not exhaustive. *Id.*

In assessing the admissibility of Rule 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Embry v. State*, 923 N.E.2d 1, 8 (Ind. Ct. App. 2010) (citing *Wilson v. State*, 765 N.E.2d 1265, 1270 (Ind. 2002)), *trans. denied*. Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

The State argues that the evidence at issue was admissible under the intent exception. However, "the intent exception to Rule 404(b) is available when a defendant goes beyond merely denying the charged culpability and affirmatively presents a claim of contrary intent, whether in opening statement, cross-examination, or presentation of his own case-in-chief." *Udarbe v. State*, 749 N.E.2d 562, 564 (Ind. Ct. App. 2001) (citing *Wickizer v. State*, 626 N.E.2d 795, 799 (Ind. 1993)). We have concluded that a trial court errs in admitting prior-misconduct evidence to show intent where the defendant does not advance a claim of contrary intent. *Id*. (defendant maintained his innocence throughout the trial and denied that the charged acts ever took place); *see also Sundling v. State*, 679 N.E.2d 988, 992 (Ind. Ct. App. 1997) (trial court erred in admitting evidence of defendant's prior uncharged molestations of victim where defendant's defense was that the molestations never occurred).

Here, Vermillion never advanced a defense theory of contrary intent. Instead, Vermillion maintained that the charged acts did not occur, and he even called witnesses to testify that on the night S.H. claimed he fondled her, he was actually at a church dinner. Because Vermilion's intent was not at issue, the prior-misconduct evidence would not have been admissible on that basis.

Because Vermillion did not object to the prior-misconduct evidence at trial, it is not clear whether the evidence was offered, improperly or not, to show that he groomed S.H. as Vermillion argues on appeal. Even assuming that the evidence was offered for this purpose and its admission was error, Vermillion has not met his burden of showing that he was denied a fair trial. Contrary to his assertion, the admission of this evidence did not require him to defend against both the charged conduct and the prior-misconduct evidence. He was required only to defend against the two counts of sexual misconduct with a minor, and on that issue, the jury heard unequivocal testimony from the victim, S.H. Because Vermillion has failed to show fundamental error, his claim is waived.

## II. Double Jeopardy

Vermillion next contends that his convictions violate the Double Jeopardy Clause of the Indiana Constitution. Specifically, he claims that they fail the actual evidence test. Whether convictions violate double jeopardy is a question of law which we review de novo. *Grabarczyk v. State*, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002).

Article 1, Section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." In *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), our Supreme Court concluded that two or more offenses are the same offense

in violation of Article I, Section 14 if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense. Under the actual evidence test, we examine the actual evidence presented at trial in order to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To find a double-jeopardy violation under this test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.*

Vermillion was convicted of two counts of Class C felony sexual misconduct with a minor. In order to prove Vermillion guilty of Count I, the State was required to show that Vermillion touched S.H.'s breast with the intent to arouse or satisfy either his or S.H.'s sexual desires. Ind. Code § 35-42-4-9(b)(1). To establish Count II, the State had to show that Vermillion touched S.H.'s vagina with intent to arouse or satisfy either his or S.H.'s sexual desires. *Id.*

S.H.'s testimony established distinct evidence for each count, punctuated by her repeated requests that Vermillion stop touching her. That is, S.H. testified that Vermillion initiated contact with her by rubbing her leg. She asked him to stop. Instead, he straddled her and began touching her breast underneath her shirt. Again, S.H. asked him to stop. He did not, and instead initiated another form of contact: he began rubbing S.H.'s vagina over her clothing. S.H.'s repeated requests that Vermillion stop touching

8

her illustrate Vermillion's "separate, albeit continuing" efforts, through a series of different touches, to arouse or satisfy his or S.H.'s sexual desires. Appellee's Br. p. 17.[3]

We conclude that the State established that Vermillion committed two separate offenses based on distinct facts. Because there is no reasonable possibility that the jury used the same evidentiary facts to establish both the essential elements of Counts I and II, there is no double-jeopardy violation.

### III. Sentencing

Vermillion also raises numerous arguments regarding his sentence. He claims that: (1) the trial court erred in ordering that he serve consecutive, rather than concurrent sentences; (2) his total sixteen-year sentence exceeds the statutory cap for consecutive sentences; and (3) his sentence is inappropriate.

### A. Consecutive or Concurrent Sentences?

We first address Vermillion's claim that the trial court should have ordered him to serve his sentences concurrently rather than consecutively. Vermillion bases his claim upon this Court's opinion in *Kolcielko v. State*, 938 N.E.2d 243 (Ind. Ct. App. 2010), and its opinion on rehearing, *Kolcielko v. State*, 943 N.E.2d 1282 (Ind. Ct. App. 2011), *trans. denied*. To address Vermillion's claim, it is necessary to provide context for *Kolcielko*.

Before *Richardson* supplied the current double-jeopardy standard, our Supreme Court held in a series of cases that "the imposition of two sentences for the same

---

[3] Vermillion's argument that his touching of S.H.'s neck or leg could have been used to satisfy the intent element of Counts I or II is not persuasive. The State was not required to prove that Vermillion did either of these things to arouse sexual his or S.H.'s desires. Moreover, under *Richardson*'s actual evidence test, there is no double-jeopardy violation when the evidentiary facts establishing the essential elements of one offense also establish only one or even several of the essential elements of a second offense. *Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002).

injurious consequences sustained by the same victim during a single confrontation" violated both the federal and state double-jeopardy prohibitions. *Bowling v. State*, 560 N.E.2d 658, 660 (Ind. 1990); *see also Watkins v. State*, 575 N.E.2d 624, 625 (Ind. 1991); *Ellis v. State*, 528 N.E.2d 60, 61 (Ind. 1988); *Bevil v. State*, 472 N.E.2d 1247, 1254 (Ind. 1985). When *Richardson* was decided in 1999, it abrogated a number of cases that articulated the "single incident" reasoning found in *Bowling*. However, *Richardson* made no mention of *Bowling*.

*Richardson*'s effect on *Bowling* was not examined until 2010, in *Kolcielko*.[4] In *Kolcielko*, the defendant got into bed with his teenage stepdaughter, placed her hand on his penis, and moved it in circles. He also pulled down her shorts and penetrated her anus with his penis. *Kolcielko*, 938 N.E.2d at 248. Kolcielko was convicted of two counts of sexual misconduct with a minor, one count as a Class B felony, and one count as a Class C felony. He was also adjudicated a habitual offender. On appeal, another panel of this Court, the *Kolcielko* Court, reversed the ruling of the trial court, concluding that under *Bowling*, Kolcielko could not receive separate sentences for the two acts of sexual misconduct "when the acts took place in one confrontation involving one victim." *Id.* at 251. The *Kolcielko* Court remanded with instructions that the trial court set aside Kolcielko's Class C felony conviction. *Id.*

*Kolcielko* was revisited in early 2011 on rehearing. There, the State argued that *Richardson*, which provided, among other things, the statutory-elements and actual-evidence tests, had overruled *Bowling*'s "single incident" analysis. The *Kolcielko* Court

---

[4] Notably, however, at least one panel of this Court concluded before *Kolcielko* that our Supreme Court had rejected *Bowling*'s "single incident" reasoning. *See Ward v. State*, 736 N.E.2d 265, 269 n.4 (Ind. Ct. App. 2000), *reh'g denied*.

disagreed, explaining that *Bowling* had not been expressly overruled and therefore continued to stand for the proposition that "a sentence must reflect the episodic nature of the crimes committed." *Kolcielko*, 943 N.E.2d at 1282. However, the Court reinstated Kolcielko's Class C felony conviction it had earlier vacated and affirmed the trial court's order that the sentences run concurrently. Our Supreme Court denied transfer in *Kolcielko* in May 2011.

*Kolcielko* is not easily applied here. Consecutive sentencing was never at issue. Double jeopardy was. To the extent that *Kolcielko* may be read to suggest that our trial courts may not impose consecutive sentences for crimes that arise out of a single confrontation involving a single victim, we cannot agree. A trial court may impose consecutive sentences for separate and distinct crimes that arise out of a single confrontation involving the same victim—subject to *Richardson*'s double-jeopardy protections, other sentencing mandates, and our abuse-of-discretion review.

We have already concluded that Vermillion's convictions do not violate double jeopardy. And we believe that the trial court did not abuse its discretion in ordering consecutive sentences based upon the facts of this case, where two separate and distinct crimes were committed against S.H.[5] We now consider whether Vermillion's sentences comport with other sentencing requirements.

*B. Indiana Code section 35-50-1-2*

Vermillion argues, and the State agrees, that the trial court erred when it sentenced Vermillion to an aggregate term of sixteen years for his two convictions. Vermillion

---

[5] We note that a single aggravating circumstance may support the imposition of consecutive sentences. *Diaz v. State*, 839 N.E.2d 1277, 1279 (Ind. Ct. App. 2005) (citing *Smylie v. State*, 823 N.E.2d 679, 686 (Ind. 2005)). Here, the trial court properly found two aggravators.

contends that this sentence exceeds the cap allowed by Indiana Code section 35-50-1-2(c).

When a court orders a defendant to serve consecutive sentences for multiple felony convictions, as the trial court did here, the court must comply with the following statutory directive:

> [E]xcept for crimes of violence, the total of the consecutive terms of imprisonment . . . to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Ind. Code § 35-50-1-2(c). The section also defines which crimes constitute a "crime of violence" and defines "episode of criminal conduct" as "offenses or a connected series of offenses that are closely related in time, place, and circumstance." I.C. § 35-50-1-2(a), (b). It is undisputed that neither of Vermillion's convictions are crimes of violence. It is also undisputed that Vermillion's crimes constitute a single episode of criminal conduct. Therefore, Vermillion's sentence cannot exceed the advisory sentence for a Class B felony, which is ten years. *See* I.C. § 35-50-2-5. The trial court abused its discretion by imposing a sentence greater than what is allowed by statute.

*C. Aggravators and Mitigators and Appropriateness*

In light of our resolution of the previous issues, we must now determine what sentence is appropriate. Vermillion argues that the trial court improperly considered past charged offenses that were dismissed as part of a plea agreement, as well as uncharged misconduct, as aggravators. He asks that we revise his sentence to two, five-year

12

sentences, with two and one-half years suspended to probation.[6] The State argues that the trial court did not err in considering these as aggravating factors and asks that Vermillion receive ten years, the maximum sentence allowed by Section 35-50-1-2(c). To that end, Vermillion argues that a maximum sentence would be inappropriate in light of the nature of the offenses and his character.

In general, sentencing lies within the discretion of the trial court. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). As such, we review sentencing decisions only for an abuse of discretion, including a trial court's decision to increase the presumptive sentence because of aggravating circumstances. *Id.* "When enhancing a sentence, a trial court must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reasons why each circumstance is aggravating or mitigating; and (3) evaluate and balance the mitigating against the aggravating circumstances to determine if the mitigating offset the aggravating circumstances." *Bailey v. State*, 763 N.E.2d 998, 1004 (Ind. 2002). We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained its reasons for the sentence. *Matshazi v. State*, 804 N.E.2d 1232, 1238 (Ind. Ct. App. 2004), *trans. denied.*

In sentencing Vermillion, the trial court identified two aggravators. The trial court first referred to Vermillion's "prior criminal history," including past charged offenses related to child molesting that were dismissed as part of a plea agreement. The second aggravator was uncharged misconduct involving minors. Vermillion argues that the court

---

[6] Vermillion also asks that we order these sentences to run concurrently, but we have already rejected this argument.

erred when it considered charges that were dismissed due to a plea agreement, relying on this Court's holding in *Pucket v. State*, 956 N.E.2d 1182 (Ind. Ct. App. 2011). Vermillion also argues that the court erred in considering uncharged misconduct. In making this argument, he asks that we depart from our Supreme Court's holding in *Russelburg v. State*, 529 N.E.2d 1193, 1197 (Ind. 1988), which permits consideration of such evidence.

As to Vermillion's first argument, the State contends that his reliance on *Pucket* is misplaced. In *Pucket*, the defendant pled guilty to one count of Class C felony child molesting. After he later admitted to violating his probation, the trial court imposed the entirety of his previously suspended sentence. In doing so, the trial court expressed displeasure with Pucket's plea agreement, which it described as generous, and found that Pucket had committed a more serious offense than the one to which he pled guilty. The court also referenced probation-violation allegations that had been dismissed. On appeal, Pucket challenged the imposition of the entire previously suspended sentence, arguing that the trial court had erred in many ways, including by considering charges dismissed as part of a plea agreement. Another panel of this Court reversed the trial court, noting in part that "a defendant who enters into a plea agreement is entitled to the benefits of that bargain . . . ." *Pucket*, 956 N.E.2d at 1187. This Court also held that the trial court erred by "rely[ing] upon dismissed probation violation allegations when deciding what sentence to impose . . . ." *Id.*

*Pucket* is distinguishable from this case in more than one way. As the State points out, Pucket is a probation-revocation case. *Pucket* also involves sentencing that stems

14

directly from the plea agreement at issue. That is not the case here. In this case, the trial court considered charges dismissed in a past plea agreement, separate and distinct from the underlying offense and resulting sentencing. Thus, Pucket does not govern our analysis. Moreover, the trial court's words in sentencing show that the court was considering these past charged offenses in the context of Vermillion's criminal history, or arrest record. *See* Tr. p. 410 ("One, the prior criminal history of the defendant.").

Our Supreme Court has held that "A record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." *Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2005). However, an arrest record, especially a lengthy one, may indicate that a defendant has not been deterred from criminal activity even after extensive contact with the criminal justice system. *Id.* "Such information may be relevant to the trial court's assessment of the defendant's character in terms of the risk that he will commit another crime." *Id.* Our review of the trial court's sentencing statement reveals that the trial court considered Vermillion's arrest record as evidence of his criminal history. While this was error, we conclude that it was harmless as this evidence may be considered as it relates to Vermillion's character. Further, we believe the court would have imposed the same sentence in light of the remaining aggravators and mitigators—Vermillion's abuse of a position of trust, previous uncharged misconduct, and the impact of his incarceration on his family. *See Roney v. State*, 872 N.E.2d 192, 206 (Ind. Ct. App. 2007) (trial court's abuse of discretion in considering Roney's substance abuse as an aggravating factor was

15

harmless error because his sentence remained the same based on the weighing of other aggravators and mitigators), *trans. denied*.

As to Vermillion's argument that the trial court erred in considering prior *uncharged* misconduct, we reject his request to revisit our Supreme Court's holding in *Russelburg* and our own subsequent holdings allowing a trial court to consider such evidence when determining a defendant's sentence. *Id.*; *see also Singer v. State*, 674 N.E.2d 11, 14-15 (Ind. Ct. App. 1996). Here, a number of witnesses testified that Vermillion had provided alcohol and sexually explicit materials to minors. The trial court did not err in considering this uncharged misconduct as an aggravating factor.

Finally, we consider Vermillion's argument that a maximum sentence is inappropriate in light of the nature of the offense and his character. Our rules authorize revision of a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "[A] defendant must persuade the appellate court that his or her sentence has met this inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a

16

given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence is suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

A person who commits a Class C felony shall be imprisoned for a fixed term between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6. Because Vermillion's sentences will be served consecutively, the maximum sentence permitted by statute is ten years. *See* Ind. Code § 35-50-2-5.

As to the nature of the offense, fourteen-year-old S.H. testified that before this incident, she had considered Vermillion as a friend with whom she could talk and laugh. Vermillion abused this position of trust when he went to S.H.'s house when she was alone, began rubbing her leg, and then straddled her, kissed her, and fondled her breasts. S.H. asked Vermillion to stop touching her. He ignored her and then began touching her vagina through her clothing, despite her repeated pleas that he stop. When he was done touching S.H., Vermillion told S.H. not to tell anyone about what happened.

In considering Vermillion's character, we note that he has a history of engaging in inappropriate conduct with minors. This history includes a prior misdemeanor conviction for dissemination of material harmful to minors. He also has a pending charge for child molesting in another county. His criminal history indicates he has not been deterred from criminal activity, particularly as it relates to minors.

We conclude that the maximum total sentence permitted by statute, ten years, is appropriate in this case. This is in line with Vermillion's own request that he receive

two, five-year sentences, although we reject his request to order these sentences to run concurrently. We remand this cause to the trial court with instructions for the court to enter an order that Vermillion serve five years—four years executed and one year suspended to probation—on each count, to run consecutively, for a total executed sentence of eight years.[7]

Affirmed in part, reversed in part, and remanded.

MATHIAS, J., and BARNES, J., concur.

---

[7] Our treatment of the sentencing issues discussed above resolves Vermillion's claim that the trial court's sentencing order is ambiguous.