Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**JEREMY K. NIX**
Matheny, Hahn, Denman & Nix, LLP
Huntington, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JONATHAN R. SICHTERMANN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSHUA D. PRESTON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 35A04-1206-CR-291 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HUNTINGTON CIRCUIT COURT
The Honorable Thomas M. Hakes, Judge
Cause No. 35C01-1101-FB-18

**February 6, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Following a jury trial, Joshua D. Preston ("Preston") was convicted of Class B felony neglect of a dependent and Class B felony battery. Preston appeals and raises two issues, which we restate as:

I. Whether the trial court abused its discretion by admitting evidence of Preston's prior drug use and withdrawal?

II. Whether Preston's convictions for neglect of a dependent and battery violated Indiana Constitution's prohibition against double jeopardy?

We affirm.

**Facts and Procedural History**

In early August 2010, Preston was babysitting N.B., the eight-month-old child of his girlfriend, Michelle Bowling ("Bowling"). Preston told Bowling that N.B. had fallen off his lap and hit her head on a television stand. Bowling observed a rug burn on N.B.'s head and some bruising across her ear. Around this same time, Bowling also observed that N.B. had stopped crawling. Bowling took N.B. to the hospital and the doctor informed her that N.B. had stopped crawling due to the ear infection she was experiencing at the time, because it was affecting her equilibrium.

In early September 2010, Preston was experiencing withdrawal from the methadone pills that he had previously been using without a prescription. Therefore, from September 4–6, 2010, he was too sick to help Bowling move into their home, and she testified that he was irritable and grouchy during that period of withdrawal

On September 7, 2010, Bowling left N.B. with Preston while she went to the store, even though Preston still looked pale and had vomited earlier that day. While Bowling was away, Preston called her and told her that N.B. had fallen off the couch and was

2

crying uncontrollably, but he then called Bowling back to tell her N.B. was doing better. However, for several hours after Bowling's return, N.B. was vomiting and lethargic. Later that night, Bowling called the doctor. The nurse advised Bowling to continue to monitor N.B. and to take her to the hospital if the vomiting did not cease.

Bowling suggested to Preston that they should take N.B. to the hospital but Preston told Bowling not to take N.B. because he would be accused of child abuse. Tr. p. 463. Nonetheless, Bowling, on her own, took N.B. to Parkview Huntington Emergency Room. Bowling relayed to the emergency room doctors Preston's story that N.B. had fallen off the couch, and after performing a CT scan, doctors released N.B. and told Bowling to give N.B. Tylenol and to put ice on her head. During the day on September 8, 2010, N.B. appeared lethargic, was still throwing up, and would not eat. Tr. p. 467. As the day progressed, N.B. seemed to improve.

On September 9, 2010, N.B. seemed to be doing better. Bowling left N.B. with Preston while she went with her stepsister to apply for a new job. While Bowling was away, Preston called Bowling's stepsister's phone and was screaming N.B.'s name repeatedly, but Bowling and her stepsister could not discern what was wrong. Preston then ran out onto his porch holding N.B. and shouting N.B.'s name. A stranger passing by, Andrew Delagrange ("Delagrange"), saw Preston out on his porch, holding N.B. Delagrange asked if he could help, and he told Preston to call 911. When the paramedics arrived at the home, nine-month-old N.B. was pale, unresponsive to stimuli, her eyes were wide open with no pupillary response, and she was having irregular and shallow breathing. Ex. Vol., State's Ex. 2. They also observed a dime sized greenish bruise on

3

her right forehead and blood in her nose. Preston told the paramedics that N.B. had rolled off the couch and was unresponsive.

N.B. was flown by helicopter to Parkview Hospital in Fort Wayne. Dr. Jayesh Patel ("Dr. Patel"), medical director of the pediatric intensive care unit, initially diagnosed N.B. with a significant cerebral concussion. After more tests and consultation with other doctors, he concluded N.B.'s symptoms were not consistent with a fall off a couch and he diagnosed her with "shaken baby syndrome[.]" Tr. pp. 391, 393. Dr. Jeffrey Bessette ("Dr. Bessette"), a diagnostic radiologist, conducted a CT scan and a MRI scan of N.B.'s brain and observed a subdural hematoma. He also reviewed the CT scan from September 7, 2010 and discovered that the subdural hematoma was already present on that day. He also observed a fracture on N.B.'s right radius from an injury sustained four to eight weeks prior. Dr. Barbara Schroeder ("Dr. Schroeder"), an ophthalmologist, also examined N.B. and noted that N.B.'s eyes showed massive preretinal and intraretinal hemorrhages, which she noted was "consistent only with non accidental shaking trauma." Ex. Vol., State's Ex. 9.

Detective Cory Boxell ("Detective Boxell") questioned Preston regarding the injuries to N.B. Preston told Detective Boxell that he was the sole adult present when N.B. fell off the couch on September 7, 2010 and that N.B. had slept most of the day on September 8, 2010. Preston also said he was the only adult present with N.B. on September 9, 2010 when, according to him, N.B. again fell off the couch, due to his son pulling the blanket N.B. was wrapped up in at the time.

Preston was charged with Class B felony neglect of a dependent resulting in serious bodily injury[1] between August 1, 2010 until September 9, 2010 and was charged with Class B felony battery[2] resulting in serious bodily injury to a person less than fourteen years of age and committed by a person of at least eighteen years of age between September 7, 2010 until September 9, 2010.

On February 27, 2012, the jury trial commenced and continued until March 1, 2012. During the trial, three physicians testified that N.B.'s condition was the result of abusive head trauma.[3] On March 2, 2012, the jury found Preston guilty on both counts. On May 7, 2012, Preston was sentenced to consecutive eighteen-year sentences, with three years suspended to probation on each count.

Preston now appeals.

## I. Admission of Character Evidence

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. Lehman v. State, 926 N.E.2d 35, 37 (Ind. Ct. App. 2010), trans. denied (citing Iqbal v. State, 805 N.E.2d 401, 406 (Ind. Ct. App. 2004)). An abuse of discretion occurs if the trial court's decision is "clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law." Boatner v. State, 934 N.E.2d 184, 186 (Ind. Ct. App. 2010).

Indiana Evidence Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in

---

[1] Indiana Code § 35-46-1-4(b)(2).

[2] Indiana Code § 35-42-2-1(a)(4).

[3] Shaken baby syndrome is a subset of abusive head trauma.

conformity therewith. It may, however, be admissible for other purposes, such as proof of motive . . . ." The State may offer evidence of motive "to prove that the act was committed," "the identity of the actor," or "the requisite mental state." Embry v. State, 923 N.E.2d 1, 9 (Ind. Ct. App. 2010) (internal quotation marks and citations omitted). The list of when evidence may be admissible is not exhaustive, and essentially, as long as the "evidence has some purpose besides [establishing] behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence." Whatley v. State, 908 N.E.2d 276, 281 (Ind. Ct. App. 2009).

"In assessing the admissibility of Rule 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403." Vermillion v. State, 978 N.E.2d 459, 463 (Ind. Ct. App. 2012) (citing Embry, 923 N.E.2d at 8). Under Indiana Evidence Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."

Here, the challenged evidence of Preston's drug withdrawal was not offered to show Preston's propensity for drug use but rather was offered to show his mental state at the time of the offenses. Specifically, it was offered to show that Preston was irritable and grouchy when he was withdrawing from the methadone, which reflects on his mental state when he was caring for N.B. Moreover, we note that, while the evidence of Preston's drug withdrawal symptoms was prejudicial, this evidence was highly probative,

6

because it related to Preston's irritability at the time he was caring for N.B. and provided context surrounding the events that led to N.B.'s injuries.[4] Therefore, we conclude the probative value of the evidence was not substantially outweighed by the prejudicial effect. For all these reasons, we defer to the trial court's decision to admit the evidence of Preston's drug use and withdrawal.

## II. Double Jeopardy

Preston also argues that his convictions for neglect and battery violate the double jeopardy provision of the Indiana Constitution. "Whether convictions violate double jeopardy is a question of law which we review de novo." Vermillion, 978 N.E.2d at 464 (citing Grabarczyk v. State, 772 N.E.2d 428, 432 (Ind. Ct. App. 2002)). Under the Indiana Constitution Article I, Section 14, "[n]o person shall be put in jeopardy twice for the same offense." In Richardson v. State, our Supreme Court concluded that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d 32, 49 (Ind. 1999) (emphasis in original).

---

[4] Preston argues that there is no evidence that he was experiencing withdrawal symptoms at the time he cared for N.B. Appellant's Br. at 9. However, the record reflects that Preston was experiencing withdrawal symptoms in the days leading up to the incident and that he vomited on September 7, 2010, which was when N.B. was first injured. Thus, we conclude the evidence was not too remote to be relevant.

Preston first challenges the dual convictions under the actual evidence test.[5]  To find a double-jeopardy violation under the actual evidence test, we must conclude that there is "a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense."  Vermillion, 978 N.E.2d at 464 (citing Richardson, 717 N.E.2d at 53) (internal quotation marks omitted).  "To determine what facts were used, we consider the evidence, charging information, final jury instructions, and arguments of counsel."  Osburn v. State, 940 N.E.2d 853, 860 (Ind. Ct. App. 2011) (internal quotation marks and citations omitted), trans. denied.

Here, the State charged Preston with Class B felony neglect and Class B felony battery.  As to the crime of Class B felony neglect, the trial court correctly instructed the jury that to find Preston guilty of neglect, it had to find that Preston (1) "having the care of a dependant, whether assumed voluntarily or because of a legal obligation," (2) "knowingly or intentionally place the dependant in a situation that endangered the dependant's life or health, to wit: endangered the life or health of [N.B.], a child less than one (1) year old," and (3) "said act resulting in serious bodily injury to [N.B.]."  Appellant's App. at 139; see also Ind. Code § 35-46-1-4.  As to the crime of Class B felony battery, the trial court correctly instructed the jury that to find Preston guilty of battery, it had to find that Preston (1) "when at least eighteen years of age," (2) "knowingly and intentionally touched another person, to wit: a child with the initials

[5] Preston concedes that the statutory elements of neglect and battery establish "two separate and distinct crimes." Appellant's Br. at 5.

8

[N.B.]," (3) "in a rude, insolent or angry manner," (4) "when [N.B.] was less then fourteen (14) years of age," and (5) "the touching resulted in serious bodily injury to [N.B.]." Appellant's App. pp. 139-40; see also Ind. Code § 35-42-2-1.

In Vandergriff v. State, this court held that additional and distinct evidentiary facts are required to prove the battery and neglect convictions. 812 N.E.2d 1084, 1088 (Ind. Ct. App. 2004). This court noted that to prove neglect, the State had to prove that the defendant had the care, custody, and control of the dependent. Id. And to prove battery, the State had to prove that the victim was less than fourteen years of age and the defendant was at least eighteen years of age. Id. Thus, this court noted that while "the same evidence may have established that [victim] was a dependant and under fourteen years of age, clearly additional evidentiary facts were required to prove that [defendant] had the care, custody and control of [the victim] and that [defendant] was at least eighteen years of age." Id. at 1087.

In this case, Preston was charged with neglect from August 1 until September 9, 2010, but was charged with battery only from September 7-9, 2010. For the Class B felony neglect charge, the State presented evidence of N.B.'s age and that Preston had care, custody and control of N.B. when she received one of her serious injuries in Preston's care while her mother went to the store on September 7, 2010. This evidence was necessary to prove neglect but not battery. The State also presented evidence that Preston urged Bowling not to take N.B. to the hospital on September 7, 2010, because he was worried he would be accused of child abuse and that when Bowling did go to the hospital with N.B., Preston did not go with them. In addition, the State's evidence

9

showed that Preston was the only person with information regarding the true cause of N.B.'s injuries, but that he told Bowling on September 7, 2010 and paramedics on September 9, 2010 that N.B. had fallen off the couch. Several doctors testified that failure to immediately seek help for a baby that has suffered from abusive head trauma could result in more complications. The State also presented evidence that in early August, when Preston was watching N.B., she fell off his lap and hit her head on a television stand. Around this same time, Bowling had also observed that N.B. had stopped crawling. The doctor informed Bowling that N.B. had stopped crawling due to the ear infection she was experiencing at the time, but after the September 9, 2010 incident, a skeletal survey revealed that N.B. had broken her right radius four to eight weeks prior, which was during the time Preston was one of her caregivers.

As to the Class B felony battery crime, the State presented evidence that the cause of her later injuries was that Preston shook her. Several doctors testified that N.B.'s injuries were not consistent with Preston's story that N.B. was injured by falling off the couch but were consistent with non-accidental shaking trauma. Finally, the State presented evidence that Preston was over eighteen years of age at the time of that offense, a necessary element for the battery conviction.

For all these reasons, we conclude there was no constitutional double jeopardy violation, because the same evidence was not used to convict Preston of neglect and battery, but rather, there were separate and distinct facts establishing the elements of each of the convictions.

However, in addition to the constitutional double jeopardy argument, Preston also makes a common law double jeopardy argument. "Under the rules of statutory construction and common law that constitute one aspect of Indiana's double jeopardy jurisprudence, where one conviction 'is elevated to a [higher class of felony] based on the same bodily injury that forms the basis of [another] conviction, the two cannot stand.'" Strong v. State, 870 N.E.2d 442, 443 (Ind. 2007) (quoting Pierce v. State, 761 N.E.2d 826, 830 (Ind. 2002)). Specifically, Preston argues that the enhancement of neglect to a Class B felony was based on the same serious bodily injury that formed the basis for the Class B felony battery. However, the State clearly argued at trial, particularly in its closing argument, that it had presented evidence of separate and distinct bodily injuries to prove the charged offenses.

In its closing argument, the State argued that the underlying serious bodily injury for battery was N.B.'s unconsciousness, subdural hematoma, and retinal hemorrhaging that resulted from the shaking, which created a substantial risk of death and caused unconsciousness. Tr. pp. 732, 746-47. The State argued that the serious bodily injuries underlying the neglect offense was N.B.'s protracted loss of function of her foot and hand and her loss of vision for a period of time, which resulted from Preston withholding information and failing to seek immediate treatment for N.B. Tr. pp. 742, 747; see also Appellant's App. p. 144.

Thus, the State clearly delineated separate and distinct underlying serious bodily injuries for the offenses.[6] Based on the evidence, charging information, final jury instructions, and, particularly, the arguments of counsel, we hold that the enhancement of the neglect offense was predicated on different serious bodily injuries than the battery offense.

## Conclusion

The trial court did not abuse its discretion by admitting evidence of Preston's drug withdrawal symptoms. Moreover, Preston's conviction for Class B felony battery and Class B felony neglect was not a double jeopardy violation.

Affirmed.

KIRSCH, J., and CRONE, J., concur.

---

[6] This case is distinguishable from Strong v. State where the enhancement for the neglect offense was premised on the same serious bodily injury that was the basis of the murder conviction. Strong, 870 N.E.2d at 444 ("The injuries urged to support the "serious bodily injury" necessary for class B neglect are the same injuries, the same harm, that resulted in the child's death and are the basis of the murder charge."). In this case, the State set forth separate acts and underlying serious bodily injuries for the different offenses.