## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James Brady Helms,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 14, 2018

Court of Appeals Case No.
48A02-1710-CR-2416

Appeal from the Madison Circuit Court

The Honorable David A. Happe, Judge

Trial Court Cause No.
48C04-1610-F6-2203

**Baker, Judge.**

[1] James Brady Helms appeals his conviction for Level 6 Felony Altering the Scene of a Death,[1] arguing that the trial court erroneously excluded evidence. Helms also appeals his sentence, arguing that the trial court erred in finding aggravating factors and that the sentence is inappropriate in light of the nature of the offense and his character. Finding no error and that the sentence is not inappropriate, we affirm.

## Facts

[2] In October 2016, a dead body was discovered in rural Madison County. The body was later identified as Billy Emberton. Police learned that Emberton had been living at Helms's residence in Summitville. Helms eventually admitted to the police that he had found Emberton dead in bed and that he wrapped Emberton up in a comforter and dumped his body in the woods. He also took Emberton's drugs and hid them in his own bedroom.

[3] On October 25, 2016, the State charged Helms with Level 6 felony altering the scene of a death and Level 6 felony obstruction of justice. Helms's jury trial took place on August 22, 2017. At trial, Helms offered into evidence two handwritten notes that he claimed were a suicide note and a will that had been written by Emberton. The trial court excluded the documents because they were not properly authenticated. Following the trial, the jury found Helms guilty of altering the scene of a death and was unable to reach a verdict on the

---

[1] Ind. Code § 36-2-14-17(b).

obstruction of justice charge. On September 18, 2017, the trial court sentenced Helms to two and one-half years. Helms now appeals.

# Discussion and Decision

## I. Exclusion of Evidence

[4] Helms first argues that the trial court should not have excluded the two handwritten notes from evidence. The admission or exclusion of evidence is within the trial court's discretion, and we will reverse only if the trial court's decision clearly contravenes the logic and effect of the facts and circumstances before it or if the trial court has misinterpreted the law. *E.g.*, *Bradford v. State*, 960 N.E.2d 871, 873 (Ind. Ct. App. 2012).

[5] To lay a foundation for the admission of evidence, the proponent of the evidence must show that it has been authenticated. *E.g.*, *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014). To meet this requirement, the proponent must present sufficient evidence that the item is what the proponent claims it is. Ind. Evidence Rule 901(a). Absolute proof of authenticity is not required, but the proponent must establish a reasonable probability that the document is what it is claimed to be. *Pavlovich*, 6 N.E.3d at 976. Authenticity may be established by direct or circumstantial evidence. *Id.*

[6] There are two documents at issue. Both are handwritten, neither is signed. Helms offered no evidence that Emberton wrote either document. Specifically, there is no evidence that he (or anyone else) observed Emberton writing the documents, that he was familiar with Emberton's handwriting, or that a

handwriting analysis had been done. Moreover, nothing in either document indicates the identity of the author, nor did anyone testify that the items in the purported will were items owned by Emberton.[2] Under these circumstances, the trial court properly found that the documents were not authenticated and did not err by excluding them from evidence.

## II. Sentence

## A. Aggravators

Helms next argues that the trial court erred in the sentencing process. Specifically, he contends that the trial court found multiple improper aggravating factors. Under the advisory sentencing scheme, we may reverse if a trial court finds aggravators that are not supported by the record or are improper as a matter of law or omits mitigators that are clearly supported by the record and advanced for consideration. *Anglemyer v. State*, 868 N.E.2d 482, 490-91 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

First, Helms argues that the trial court erred by considering the suffering of Emberton's family as an aggravator. It is apparent, however, that the trial court did not consider this to be an aggravating factor, but was instead commenting on the nature of Helms's offense—which it did not, in the end, find as an aggravator. Instead, the trial court found Helms's criminal history and his

---

[2] There was some evidence that one reference in the purported will related to items belonging to Emberton, but the testimony was not definitive and was limited to one small portion of the document. Tr. Vol. II p. 240.

arrest on new offenses while on pretrial release for the instant charges as the sole aggravating factors. Tr. Vol. II p. 75-76; Appellant's App. Vol. II p. 12. Therefore, we find no error with respect to the trial court's comments regarding Emberton's family.

[9] Second, Helms argues that the trial court should not have found his criminal history to be an aggravating factor because he "had gone several years without any criminal charges." Appellant's Br. p. 15. Given that a defendant's criminal history is undisputedly a proper aggravating factor, this amounts to an argument that the trial court placed too much weight on this factor—which is an argument we may not address. *Anglemyer*, 868 N.E.2d at 490-91.

[10] Third, Helms argues that the trial court should not have considered his arrest on new charges as an aggravator. The trial court may consider arrests and pending charges in the context of evaluating the character of a defendant and determining the risk that he will reoffend. *E.g.*, *Vermillion v. State*, 978 N.E.2d 459, 468 (Ind. Ct. App. 2012). Therefore, the fact that Helms had new charges pending at the time of sentencing could properly be considered insofar as it relates to his character and propensity for future criminal conduct. *Id.* We find no error in the trial court's sentencing statement.

## B. Appropriateness

[11] Finally, Helms argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character pursuant to Indiana Appellate Rule 7(B). In considering an argument under Rule 7(B), we

must "conduct [this] review with substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[12]   Helms was convicted of one count of a Level 6 felony. For this conviction, he faced a sentence of six months to two and one-half years imprisonment, with an advisory term of one year. I.C. § 35-50-2-7(b). The trial court imposed the maximum term of two and one-half years.

[13]   As for the nature of his offense, Helms found his friend and roommate dead. Rather than call the police, he hauled the body to the countryside and dumped it in the woods like garbage. He took his dead friend's drugs and hid them in his own bedroom. Helms likely moved the body because he did not want the police to investigate in the house and discover his own substantial drug dealing operation. Showing little genuine remorse, Helms commented to the probation officer preparing the presentence investigation report that dumping the body in the woods was "not the worst thing I could have done." Appellant's App. Vol. II p. 98.

[14]   As for Helms's character, he has many criminal convictions dating back to the age of nineteen, including four prior felony convictions. He has violated probation and community corrections multiple times. While these charges

were pending, he was arrested on multiple charges related to dealing and possessing methamphetamine and other illicit substances.

[15] Having considered the nature of the offense and Helms's character, we find that the sentence imposed by the trial court is not inappropriate.

[16] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.