**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SAMUEL J. BEASLEY**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRYAN M. STRICKLER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1401-CR-42 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Kimberly S. Dowling, Judge
Cause No. 18C02-1112-FA-12

**October 22, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Bryan Strickler appeals his 100-year sentence for two counts of Class A felony child molesting. We affirm.

**Issues**

The issues before us are:

I.    whether the trial court abused its discretion in sentencing Strickler; and

II.   whether his sentence is inappropriate.

**Facts**

In August 2011, Ashley Stapert began living with a long-time friend, Nikki Chambers, at Chambers's apartment in Muncie. Chambers had a daughter, J.F., who was born in May 2011. In October 2011, Strickler, Stapert's boyfriend, also moved in. Chambers would often leave J.F. in Stapert and Strickler's care while she worked during the daytime. J.F. also sometimes slept at night near Strickler and Stapert in the apartment's living room.

Late in the night of November 7, 2011, or early morning of November 8, Stapert awoke to see Strickler lying naked on the floor behind J.F., who also was naked. Stapert could see that Strickler's penis was near J.F.'s buttocks. Strickler then threatened to hit Stapert if she did not join him on the floor with J.F. Stapert obliged, then began performing oral sex on and placed her finger inside J.F.'s vagina while Strickler remained behind J.F., holding her. This continued for about five minutes. Stapert then ended her participation, and she did not witness any additional conduct by Strickler.

The next morning, Stapert told Chambers what had happened.[1] Chambers kicked Stapert and Strickler out of the house. J.F., meanwhile, had gone to visit her father. Later in the day, J.F.'s father called Chambers to tell her that he had observed red bumps that looked like hemorrhoids near her anus. Chambers then called police and told J.F.'s father to take her to the hospital. At Riley's Children's Hospital in Indianapolis, the red bumps were diagnosed as genital warts. According to Stapert, Strickler also had genital warts around this same time. J.F. also had an anal fissure and was constipated, both of which may be indicators of sexual abuse, but the doctor who examined J.F. could not determine whether she had suffered "acute trauma" from such abuse. Ex. 2. Strickler later admitted to a friend that he had "done something" to J.F., but he claimed that he had been forced to do so by Stapert, whom Strickler claimed to be afraid of due to her violent tendencies. Tr. p. 136.

The State charged Strickler with one count of Class A felony child molesting and one count of Class A felony attempted child molesting. The first count alleged that Strickler had performed oral sex on J.F., while the second count alleged that Strickler had rubbed his penis on J.F.'s buttocks. After a bench trial, Strickler was convicted as charged. Although there was no evidence that Strickler had performed oral sex on J.F., his conviction on that charge apparently was based on accomplice liability for Stapert's actions.

---

[1] Stapert indicated in her testimony that she told Chambers about the molestation; Chambers testified that Stapert originally said that Strickler had tried to "smother" J.F. Tr. p. 150.

After conducting a sentencing hearing, the trial court issued a detailed sentencing statement that noted fifteen aggravating circumstances and four mitigating circumstances. Among the aggravating circumstances, the trial court found:

> 7.  The Crime is particularly devastating to the victim in that she will live with the long term physical effects of a sexually transmitted disease as a result of being sexually abused . . .
>
> 8.  The Defendant was in a position having care and control of the victim of the offense, to wit:  fulfilling the role of caregiver and a trusted family friend having a duty to protect her from this type of criminal behavior . . .
>
> \* \* \* \* \*
>
> 11.  The harm or injury of [sic] damage suffered by the victim was both significant and greater than the elements necessary to prove the elements of the offense . . . .

App. p. 256.  Included among the mitigators, the trial court noted Strickler's lack of prior criminal convictions and his "possible learning disability and a possible mental health issue . . . ."  Id.  The trial court imposed the maximum sentence of fifty years for each conviction, to be served consecutively.  Strickler now appeals.

**Analysis**

Strickler makes distinct arguments both that the trial court abused its discretion in sentencing him and that his sentence is inappropriate.  We engage in a four-step process when evaluating a sentence.  Anglemyer v. State, 868 N.E.2d 482, 491 (Ind. 2007).  First, the trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence."  Id.  Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse

4

of discretion. Id. Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. Id. Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). Id. Even if a trial court abuses its discretion by not issuing a reasonably detailed sentencing statement or in its findings or non-findings of aggravators and mitigators, we may choose to review the appropriateness of a sentence under Rule 7(B) instead of remanding to the trial court. See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007).

## I. Abuse of Discretion

An abuse of discretion in identifying or not identifying aggravators and mitigators occurs if it is "'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" Id. at 490 (quoting K.S. v. State, 849 N.E.2d 538, 544 (Ind. 2006)). Additionally, an abuse of discretion occurs if the record does not support the reasons given for imposing sentence, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Id. at 490-91.

Strickler challenges the trial court's finding that he gave J.F. a sexually transmitted disease, which formed the basis of aggravators seven and eleven listed above. In particular, he notes the undisputed evidence in the record that genital warts, which are caused by a strain of human papillomavirus ("HPV"), have an incubation period of not less than two to three weeks after infection and will not be visible before that time. This evidence came from a nurse's testimony and reports prepared by the Centers for Disease

5

Control and Prevention and medical researchers. Thus, Strickler asserts he could not have been the cause of the genital warts observed on J.F. on November 8, 2011, because the incident for which he was convicted occurred during the previous night; the genital warts would have to have been related to an exposure to HPV that occurred at least two to three weeks previously.

We agree that, as a scientific matter of fact, the genital warts observed on J.F. on November 8, 2011, could not have resulted from the actions of Strickler during the previous night. However, Strickler moved into Chambers's residence several weeks previously and had been assisting with J.F.'s care and had access to her during that time period. Strickler does not deny that he had genital warts during this time period. Although Strickler was not charged with any other molestations of J.F. and Stapert did not testify about any other incidents during trial, she did tell police, in a statement admitted into evidence, that Strickler had molested J.F. on other occasions. The trial court was not forbidden from inferring that Strickler may have committed earlier acts against J.F. See Vermillion v. State, 978 N.E.2d 459, 468 (Ind. Ct. App. 2012) (reaffirming that trial courts may rely upon uncharged misconduct as an aggravating circumstance). Thus, the conclusion that Strickler was the cause of J.F.'s genital warts is not clearly against the logic and effect of the circumstances before the trial court. The trial court did not abuse its discretion in relying on that fact as the basis for two of its aggravating circumstances.

Strickler also asserts that the trial court abused its discretion in finding that he was a "caregiver and a trusted family friend" of Chambers's as stated in the eighth

6

aggravating circumstance. App. p. 256. He notes that although Stapert had known Chambers for a long time, he was essentially a stranger to Chambers before he moved in. Regardless, Chambers did entrust Strickler with the care of J.F. for extended periods of time. Courts have upheld abuse of a position of trust as a legitimate aggravating circumstance in similar situations. See Martin v. State, 535 N.E.2d 493, 498 (Ind. 1989) (affirming that defendant was in position of trust when he beat his live-in girlfriend's son to death while babysitting); Shaffer v. State, 674 N.E.2d 1, 9 (Ind. Ct. App. 1996) (affirming that defendant was in a position of trust over children he molested, whom his wife babysat in her and defendant's home), trans. denied. Even if the extent to which Strickler occupied a position of trust in Chambers's home and over J.F. was debatable, we cannot re-evaluate the weight that a trial court decides to place on a proper aggravating circumstance.[2] See Anglemyer, 868 N.E.2d at 491. The trial court did not abuse its discretion with respect to this aggravating circumstance.

## II. Inappropriateness

We now assess whether Strickler's sentence is inappropriate under Appellate Rule 7(B) in light of his character and the nature of the offense. See Anglemyer, 868 N.E.2d at 491. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id.

---

[2] In any case, the trial court said it only was giving "some weight," not "significant weight," to this aggravating circumstance. See App. p. 256.

"Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

Regarding the nature of the offense, Strickler was allowed to live in Chambers's apartment and was entrusted with the care of Chambers's six-month-old daughter. In return, Strickler took advantage of the situation to perform sexual acts upon a fragile infant on at least one occasion, if not more. Strickler also forced Stapert to join in his heinous acts by making physical threats against her.[3] Ultimately, he passed along his HPV infection to a baby. Chambers noted she will have to one day tell J.F. what

---

[3] Strickler questions Stapert's credibility on this point, but we must view the evidence in a light most favorable to the judgment.

happened because of the HPV infection and the risk it may pose to J.F. in the future.[4] Even after Strickler's conviction and in pre-sentencing discussions with a probation officer, Strickler continued to insist that Stapert had forced him to molest J.F. This reveals a failure to accept complete responsibility for his own actions.

As for Strickler's character, he was twenty-three at the time of the offense and these are his first criminal convictions. He has pending charges for three misdemeanor offenses allegedly committed before the molestations. There was some evidence presented that Strickler may have a learning disability and have some unspecified mental health issues, but their relation to the offense are unclear.

Strickler contends that his case compares favorably to others in which our supreme court reduced sentences for child molestation. In exercising our power to review and revise sentences, we may compare sentences of those convicted of the same or similar offenses, although such comparison is not required. Corbally v. State, 5 N.E.3d 463, 471-72 (Ind. Ct. App. 2014). The first case Strickler cites is Rivers v. State, 915 N.E.2d 141 (Ind. 2009). In that case, the trial court imposed consecutive thirty-year sentences for two counts of Class A felony child molesting, but our supreme court ordered that they be served concurrently. Rivers, 915 N.E.2d at 144. The defendant in that case had no other criminal history and had molested his seven or eight-year-old niece, with whom the defendant had otherwise had a positive relationship before the molestation occurred. There was no indication in the opinion that the niece had been physically injured by the

---

[4] The evidence from the CDC and medical research reports is unclear as to the extent to which J.F.'s future health is threatened by the HPV infection, but it seems clear that there is a risk. Thankfully, the medical documents indicate that the strain of HPV that causes genital warts is different from the strain associated with cancer.

acts, which occurred very close in time, and the defendant committed no other molestations for seven years before the niece disclosed what had happened.

The second case is Monroe v. State, 886 N.E.2d 578 (Ind. 2008). The defendant in that case received a total 100-year sentence for five counts of Class A felony child molesting, which our supreme court ordered reduced to a total aggregate term of fifty years. Monroe, 886 N.E.2d at 581. The facts of the case revealed the defendant had repeatedly molested a child of his live-in-girlfriend for two years, when the victim was between the ages of seven and nine; as in Rivers, there is no indication in the opinion that the victim sustained any injuries, aside from those inherent in molestation. The defendant's criminal history consisted only of driving-related misdemeanors. Our supreme court stated that the defendant's position of trust over the victim warranted an aggravated sentence, but also noted, "the five counts of child molestation were identical and involved the same child," and it could not discern a reason for imposing consecutive sentences. Id. at 580.

The final case is Buchanan v. State, 767 N.E.2d 967 (Ind. 2002). There, the trial court imposed a maximum fifty-year sentence upon a defendant convicted of Class A felony child molesting for one incident of performing oral sex on a five-year-old girl and videotaping the incident. Our supreme court reduced the sentence to forty years.[5] Buchanan, 767 N.E.2d at 974. Among other things, the court noted "that this crime was

---

[5] The court applied the "manifestly unreasonable" standard for reviewing sentences that was in effect at the time.

committed without excessive physical brutality, the use of a weapon, or resulting physical injury," and was only a one-time occurrence. Id. at 973.

Although Strickler has no criminal history, and his convictions are related solely to a one-time non-violent occurrence, we find his case to be distinguishable from Rivers, Monroe, and Buchanan. Most notably, J.F.'s age at the time of the incident makes Strickler's conduct undeniably outrageous. Our supreme court has observed, "a victim's age . . . suggests a sliding scale in sentencing, as younger ages of victims tend to support harsher sentences. . . . The younger the victim, the more culpable the defendant's conduct." Hamilton v. State, 955 N.E.2d 723, 727 (Ind. 2011). As a six-month-old, J.F. was completely powerless to do anything to resist Strickler and she was unable to report what he did to anyone. If Stapert had not confessed to Chambers, his conduct might never have been discovered. Additionally, infecting a child with a sexually transmitted disease certainly increases the egregiousness of a molestation. See Brown v. State, 760 N.E.2d 243, 247 (Ind. Ct. App. 2002), trans. denied. Strickler took advantage of Chambers's generosity in allowing him to live in her apartment by preying on her infant child. And, he continues to shift the blame for what happened onto Stapert, failing to take responsibility for his actions as a grown man. All things considered, we cannot say that Strickler's 100-year aggregate sentence is inappropriate in light of the nature of the offense and his character.

## Conclusion

The trial court did not abuse its discretion in sentencing Strickler, and his sentence is not inappropriate. We affirm.

11

Affirmed.

BRADFORD, J., and BROWN, J., concur.