## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 04 2018, 10:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicole A. Zelin
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Paul Simon Price,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 4, 2018<br><br>Court of Appeals Case No.<br>18A-CR-23<br><br>Appeal from the Hancock Circuit Court<br><br>The Honorable Richard D. Culver, Judge<br><br>The Honorable Jeffrey C. Eggers, Judge Pro Tempore<br><br>Trial Court Cause No.<br>30C01-1702-F4-404 |

**Altice, Judge.**

## Case Summary

[1] Following a bench trial, Paul S. Price was convicted of three counts of sexual misconduct with a minor, two as Level 4 felonies and one as a Level 5 felony. Price was sentenced to an aggregate term of thirteen years, with three years suspended. On appeal, Price presents three issues for our review:

1. Is the evidence sufficient to support his convictions?

2. Do his convictions violate double jeopardy principles?

3. Is his sentence inappropriate?

[2] We affirm.

## Facts & Procedural History

[3] C.D., born on December 14, 2001, is the youngest of four girls. C.D.'s oldest sister, Lyndsey, is sixteen years older. Price began dating Lyndsey when C.D. was about two years old, and he and Lyndsey eventually married in July 2010.[1] On the morning of Saturday, February 18, 2017, C.D. disclosed information to her mother about encounters between her and Price that were sexual in nature.

[4] The first sexual encounter occurred early in the summer of 2016 when C.D. was fourteen years old. C.D. would often visit and spend the night at Lyndsey and Price's home. On this particular occasion, C.D.'s mother dropped her off around 1:00 p.m. Lyndsey and Price were both home. The afternoon began

---

[1] Price and Lyndsey are now divorced.

normally, but around 4:00 p.m., Price, who was drinking, offered C.D. alcohol. Between 4:00 and midnight, C.D. consumed six shots of vodka. The drinking occurred in the kitchen and only Price and C.D. were present. This was C.D.'s first exposure to alcohol and it left her feeling "[v]ery dizzy and disoriented" and in a state C.D. described as "tunnel vision." *Transcript* at 67.

Lyndsey fell asleep in her bedroom around midnight. Price and C.D. were in the living room on the couch watching television. At some point they began to kiss. They ended up "on top of each other" and they each took their clothes off. *Id*. at 68. According to C.D., she and Price "made out", and after about thirty minutes, Price stepped back and suggested that C.D.'s family would hate him for what he was doing. *Id*. They then continued. When C.D. and Price were both fully naked, Price inserted his fingers inside C.D.'s vagina, rubbed his penis on her vagina, and then performed oral sex on her. The sexual encounter lasted until around 4:00 a.m. when C.D. told Price that she wanted to go to sleep. Price then went to his and Lyndsey's bedroom. The next morning, C.D. awoke around 10:00 a.m. Price seemed panicked and asked C.D. if she had consented to his actions. After she indicated that she had consented, Price had her "pinky-promise[]" not to say anything to anyone. *Id*. at 72.

Near the end of that same summer, C.D. was again staying the night at Price's home. In the evening, over the course of a couple of hours, Price provided C.D. with four to six shots of vodka. Price was also drinking and was the only one present when C.D. drank. Again, Lyndsey fell asleep in her bedroom late in the evening. A second sexual encounter occurred between Price and C.D.

while they were in the living room sitting on the couch. Price and C.D. had both removed their pants and underwear and Price rubbed his erect penis on C.D.'s vagina.[2] This encounter ended when C.D. told Price that she was going to throw up. Price retrieved a bowl from the kitchen and after C.D. finished throwing up, he stood next to her while she showered. Price then went to bed, and C.D. slept on the couch.

[7] A third sexual encounter occurred in the winter, either in January or February 2017. C.D. had asked to stay at her sister and Price's home and her mother dropped her off. Price and Lyndsey were both home. As with the first two incidents, Price was drinking alcohol and provided C.D. with shots of vodka. Lyndsey was not present in the kitchen when C.D. consumed alcohol. That night, Lyndsey fell asleep in the living room. Price and C.D. went into the garage and discussed their prior sexual encounters and agreed that they should stop engaging in such behavior. During this discussion, Price told C.D. that he had "planned to go all the way." *Id*. at 82, 90. He also told her that he had put a condom in the bookshelf area in the living room. Although he said that "he would own up to what he did," Price indicated that he preferred she not tell anyone about what had happened between them. *Id*. at 83.

[8] When they were finished talking, Price carried C.D. into the house on his back. He took her into his bedroom and they wrestled on his bed in a playful manner.

---

[2] Price did not insert his penis into C.D.'s vagina.

While straddling C.D. and holding her hands above her head, Price tried to kiss her, but she did not reciprocate. Price then lifted C.D.'s shirt and started licking and sucking on her breasts. The encounter ended when C.D. told Price she wanted to go to bed. C.D. was fifteen years old at the time.

[9] A couple weeks after this incident, C.D. made the decision to tell her mom about what had occurred between her and Price. Even though it was unusual for C.D. to cry, she cried when she told her mother about her sexual encounters with Price. C.D.'s mother immediately called her second oldest daughter. C.D.'s mother then called Lyndsey, who, at the time, was travelling back from Evansville with Price. Lyndsey's mother told her about what C.D. had disclosed. Lyndsey confronted Price, and Price called her mother back. Lyndsey and C.D.'s mother told Price what she had learned and that she did not know how she could keep C.D.'s father from "ripping [his] head off," a figure of speech she used to convey her husband's suspected anger. *Id*. at 39. Price responded, "maybe I should just blow my head off." *Id*. Price then said he was sorry. After the phone conversation ended, Lyndsey asked Price if he had touched C.D. and Price nodded in the affirmative. Price told her that it happened in the summer.

[10] C.D.'s mother then contacted the police and made a report. On February 20, 2017, C.D. was interviewed by a family case worker with DCS in collaboration with the prosecutor's office and local sheriff's department. On February 24, 2017, the State charged Price with five counts: Counts I and II, sexual

misconduct with a minor as Level 4 felonies;[3] Count III, sexual misconduct with a minor as a Level 5 felony; Count IV, criminal confinement as a Level 6 felony; and Count V, sexual battery as a Level 6 felony. A bench trial was held on October 23, 2017. The trial court found Price guilty of Counts I, II, and III, and not guilty of Counts IV and V. The trial court held a sentencing hearing on December 7, 2017, and sentenced Price to consecutive terms of five years on Counts I and II and three years on Count III, with three years suspended. In sentencing Price, the trial court cited as mitigating circumstances Price's lack of a criminal record and that the offense was not likely to recur. As aggravating, the court found that Price violated a position of trust and that he lacked remorse. Price now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

### 1. Sufficiency

Price argues that the State failed to present sufficient evidence to prove that he met the requisite age to have committed the offenses. He also generally attacks

---

[3] The charging information for Counts I and II is verbatim:

> on or between May 27, 2016 and July 31, 2016, in Hancock County, State of Indiana, Paul S. Price, a person at least twenty-one (21) years of age, did perform sexual intercourse or other sexual conduct, as defined by I.C. 35-31.5-2-221.5, with C.D., a child at least fourteen (14) years of age but less than sixteen (16) years of age, to-wit: 15 years of age.

*Appellant's Appendix Vol. II* at 14-15. In its closing statement, the trial court argued that Count I was supported by evidence that Price placed his mouth on C.D.'s vagina and performed oral sex on her. With respect to Count II, the State asserted that such charge was supported by evidence that Price put his fingers in C.D.'s vagina. Both acts were part of the initial sexual encounter between Price and C.D. The State did not rely upon evidence of the second sexual encounter between Price and C.D. as support for any of the charges of sexual misconduct with a minor.

the State's poof that he committed acts of sexual misconduct with a minor.  In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses.  *Atteberry v. State*, 911 N.E.2d 601, 609 (Ind. Ct. App. 2009).  Instead, we consider only the evidence supporting the conviction and the reasonable inferences flowing therefrom.  *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, the judgment will not be disturbed.  *Baumgartner v. State*, 891 N.E.2d 1131, 1137 (Ind. Ct. App. 2008).

[12]  To prove that Price committed sexual misconduct with a minor as a Level 4 felony, the State was required to prove beyond a reasonable doubt that (1) being at least twenty-one years of age, (2) Price performed sexual intercourse or other sexual conduct with C.D., (3) when C.D. was at least fourteen years of age, but less than sixteen years of age.  Ind. Code § 35-42-4-9(a)(1).  To prove that he committed sexual misconduct as a Level 5 felony, the State was required to prove that (1) being at least twenty-one years of age, (2) Price performed or submitted to fondling or touching with C.D., (3) when C.D. was at least fourteen years of age, but less than sixteen years of age.  I.C. § 35-42-4-9(b)(1).

[13]  Price first argues that the State failed to establish that he was of the requisite age at the time of the offenses.  We disagree.  Price testified that he was nineteen when he met Lyndsey and that he knew Lyndsey for about five years before they were married in July 2010.  The sexual encounters between Price and C.D. occurred about six years later.  This evidence establishes that Price was well

over twenty-one years old (i.e., approximately thirty years old) when he committed sexual misconduct with a minor.

[14] Price also argues that the State failed to prove any of the incidents of sexual misconduct with a minor. Price asserts that C.D.'s testimony is unsupported by other evidence. He asserts that C.D. was aware that her parents did not like him, that C.D. drank large amounts of alcohol, and that Lyndsey was present in the home when the alleged sexual misconduct took place and yet she was not aware of what occurred between him and C.D. Price also directs us to his testimony in which he adamantly denied having any sexual contact with C.D.

[15] Price's arguments amount to a request that this court reweigh the evidence and assess the credibility of the witnesses. We will not engage in such task on appeal. Here, the trial court, as the fact-finder, heard and believed C.D.'s testimony in which, as set forth above, she clearly delineated three instances of sexual misconduct—Price put his mouth on her vagina, Price put his fingers in her vagina, and Price put his mouth on her breasts.[4] The first two acts are sufficient to support Counts I and II and the third act supports Count III.

## 2. Double Jeopardy

[16] Article 1, section 14 of the Indiana Constitution provides that "[n]o person shall be put in jeopardy twice for the same offense." Price argues that his convictions

---

[4] The first two instances were part of the initial sexual encounter between Price and C.D.

and sentences on Counts I and II violate double jeopardy principles. Specifically, Price asserts that Counts I and II were established by evidence arising from a single offense "as the conduct took place simultaneously on one occasion."[5] *Appellant's Brief* at 11. In support of his argument, Price directs us to *Watkins v. State*, 575 N.E.2d 624 (Ind. 1991) and *Bowling v. State*, 560 N.E.2d 658 (Ind. 1990). We note that these cases relied upon the Supreme Court's decision in *Ellis v. State*, 528 N.E.2d 60 (Ind. 1988). While Price's argument may have merit under this line of cases, in *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999), our Supreme Court explicitly stated that *Ellis* was superseded because the court did not separately evaluate a double jeopardy claim by looking to the actual evidence as required by Indiana's double jeopardy clause. Thus, Price's claim of double jeopardy in this regard fails.

[17] In *Richardson*, the Indiana Supreme Court determined that two or more offenses constitute the same offense for double jeopardy purposes "if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to obtain convictions, the essential elements of one challenged offense also establish the essential elements of another challenged offense." *Frazier v. State*, 988 N.E.2d 1257, 1262 (Ind. Ct. App. 2013) (citing *Richardson v. State*, 717 N.E.2d 32, 49 (Ind. 1999)). "Whether convictions violate double jeopardy is a question of law which we review de novo." *Id*.

---

[5] As noted *supra*, the State relied upon evidence of two acts occurring during the initial sexual encounter between Price and C.D. as establishing the charges set out in Counts I and II.

[18]     The focus here is on the actual evidence used to convict Price of the offenses. This analysis requires a consideration of whether there is a reasonable possibility that the evidentiary facts used to establish the essential elements of one offense may also have been used to establish all of the essential elements of the other challenged offense. *See Spivey v. State*, 761 N.E.2d 831, 833 (Ind. 2002) ("the Indiana Double Jeopardy Clause is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense"). The possibility must be reasonable, not speculative or remote. *Griffin v. State*, 717 N.E.2d 73, 89 (Ind. 1999).

[19]     As delineated by the State, Count I was supported by evidence that Price, being at least twenty-one years of age, performed "other sexual conduct," in that he placed his mouth on C.D.'s sex organ, i.e., her vagina. *See* I.C. § 35-42-4-9(a)(1); Ind. Code § 35-31.5-2-221.5 (defining "[o]ther sexual conduct" as an act involving "a sex organ of one (1) person and the mouth or anus of another person"). With regard to Count II, the State relied on separate evidence that Price penetrated C.D.'s vagina with an object, i.e., his fingers. *See* I.C. § 35-31.5-2-221.5 (defining "[o]ther sexual conduct" as including "the penetration of the sex organ . . . of a person by an object). Notwithstanding the fact that Price performed both of these acts during the first sexual encounter with C.D., the two offenses are based on separate and distinct acts. Thus, Price's convictions under Counts I and II do not violate double jeopardy principles. *See Vermillion v. State*, 978 N.E.2d 459, 465 (Ind. Ct. App. 2012) (finding no double jeopardy

violation where two convictions for sexual misconduct with a minor were based on separate, distinct facts occurring during a single encounter).

### 3. Inappropriate Sentence

Price argues that his sentence is inappropriate in light of the nature of the offense and his character. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014), *cert. denied*, 135 S.Ct. 978 (2015). Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State*, 4 N.E.3d 190, 203 (Ind. 2014) (quoting App. R. 7). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

The determination of whether we regard a sentence as inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given

case." *Bethea v. State*, 983 N.E.2d 1134, 1145 (Ind. 2013) (quoting *Cardwell*, 895 N.E.2d at 1224). Moreover, "[t]he principal role of such review is to attempt to leaven the outliers." *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013). It is not our goal in this endeavor to achieve the perceived "correct" sentence in each case. *Knapp*, 9 N.E.3d at 1292. Accordingly, "the question under Appellate Rule 7(B) is not whether another sentence is more appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008) (emphasis in original).

[22] In order to assess the appropriateness of a sentence, we first look to the statutory range established for the classification of the relevant offense. Price was convicted of two Level 4 felonies, the statutory range for which is two to twelve years with an advisory sentence of six years. *See* Ind. Code § 35-50-5-5.5. Price was also convicted of a Level 5 felony, the statutory range for which is one to six years with an advisory sentence of three years. *See* I.C. § 35-50-2-6. Here, Price was sentenced to one year less than the advisory with respect to the Level 4 felonies and the advisory sentence of three years, which the trial court suspended, on the Level 5 felony. He thus bears a particularly heavy burden in persuading us that his sentence is inappropriate. *See Fernbach v. State*, 954 N.E.2d 1080, 1089 (Ind. Ct. App. 2011) (noting that because the advisory sentence is the starting point the legislature has chosen as appropriate for the crime committed, a defendant who has received the advisory sentence bears a particularly heavy burden in persuading us that his sentence is inappropriate), *trans. denied*.

[23] One fact that relates to both the nature of the offense and the character of the offender is that before every sexual encounter between Price and C.D., Price provided vodka to C.D., who was at the time just fourteen/fifteen years old. C.D. testified that after consuming the alcohol, her faculties were impaired in that she felt dizzy and disoriented and experienced what she described as tunnel-vision. A second fact that relates to both considerations is that Price was in a position of trust as C.D., being his wife's youngest sister, was a member of his family. Perhaps in recognition that Price does not have a criminal history, the trial court sentenced him to one year less than the advisory sentence for each Level 4 felony and suspended the three-year advisory sentence on the Level 5 felony. Given the foregoing, we cannot say that Price's aggregate thirteen-year sentence with three years suspended for three separate instances of sexual misconduct with a minor is inappropriate.

[24] Judgment affirmed.

Najam, J. and Robb, J., concur.